# W. ZINKEN v. MELROSE GRANITE COMPANY AND ANOTHER.[1]

August 8, 1919.

No. 21,193.

**Workmen's Compensation Act — finding of injury supported by evidence.**

1. A finding that lime was splashed into the eyes of a stone mason by a fellow workman and that both eyes were injured is sustained by the evidence.

**Same — release for loss of one eye not a bar to claim for the other eye.**

2. A settlement made by the workman with his employer and the insurer of the employer on the mutual assumption that he was entitled to compensation for the loss of one eye only, and a release executed on the same assumption, do not bar him from thereafter claiming compensation for the injury to the other eye.

**Same — permanent partial disability.**

3. A workman's left eye had been injured so that one-half of his ability to see with it was lost. Thereafter, in the course of his employment, both eyes were injured, the right so badly that it became necessary to remove it, and the left to such an extent that, although he is not totally blind, he can no longer follow any occupation. *Held*, that he is entitled to the compensation for permanent partial disability which is fixed by the schedule found in section 4, c. 209, Laws 1915, that the amount of compensation is not determined by the clause in the schedule covering the loss of one eye, but by the clause which provides that the compensation shall be 50 per centum of the difference between the wage of the workman at the time of his injury and the wage he is able to earn in his partially disabled condition, for a period not exceeding three hundred weeks.

Proceeding in the district court for Stearns county under the Workmen's Compensation Act in which judgment was entered in favor of the workman and against his employer and the insurer of the employer. Upon the relation of the employer and its insurer the supreme court granted its writ of certiorari directed to the district court for Stearns county and the Honorable John A. Roeser, judge thereof, to review the proceedings in that court. Affirmed.

[1]Reported in 173 N. W. 857.

*L. N. Foster* and *John D. Sullivan,* for relators.

*Paul Ahles,* for respondent.

LEES, C.

This was a proceeding under the Workmen's Compensation Act, in which Zinken, an employee of the Melrose Granite Company, was awarded compensation, and his employer and its insurer, The Travelers Insurance Company, by writ of certiorari, bring here for review the judgment entered for the amount awarded.

Zinken was a stone mason employed on July 20, 1915, by the granite company in laying the foundation walls of a building it was erecting. Mortar was brought to him by a fellow workman, whose duty it was to deposit it on a mortar board. In doing so, he carelessly splashed some of the mortar into Zinken's face and eyes and the lime burned his right eye so badly that it became necessary to remove it, and also injured his left eye as hereafter stated. Several years before, Zinken's left eye had been struck with a hammer and quite seriously injured. It healed, but the pupil was elongated, there was some adhesion of the iris to the cornea, some scar tissue formed over the cornea, and the eye lacked the power of accommodation. In consequence of this injury, it had lost one-half of its normal power of vision. Zinken's wages were $24.30 per week. The accident totally disabled him from thereafter earning any wages. Eleven hundred dollars was paid him in instalments of $22 each, pursuant to an agreement for a settlement executed in August, 1915. On June 16, 1917, when the final instalment was paid, he executed a release of all further claims he might have against his employer and the insurance company.

In July, 1918, he commenced this proceeding. The trial court found that his left eye, as well as the right, was burned by the lime, and that the scar tissue over the cornea was thereby enlarged to such an extent that he had lost all practical vision, being only able to have light perception through a small section of the cornea. It was found that he was entitled to receive $3,300 total compensation, less $1,100, which had been paid, and that the release given in consideration of the payment of the latter amount was not binding upon him, for the reason that he signed it because he was told and believed that it was a receipt like the other receipts he had signed as the several instalments were paid.

As presented in argument, the questions are: (1) Was the court justified in finding that lime was splashed in Zinken's left eye? (2) Was it justified in disregarding the settlement and release? (3) If both questions are answered in the affirmative, was the correct amount awarded as compensation?

1. No useful purpose would be served by a review of the evidence bearing on the question of whether lime was or was not splashed in Zinken's left eye. His own testimony, if credited, would support a finding that it was. The testimony of Dr. Whiting to the contrary is quite persuasive. There might have been a finding either way, hence we are not required to hold that the finding in his favor is manifestly against the clear preponderance of the evidence, and it cannot be disturbed. State v. District Court of St. Louis County, 137 Minn. 435, 163 N. W. 755, L.R.A. 1917F, 1094.

2. Zinken testified that Dr. Whiting, who was employed by the insurance company to attend him, told him, after removing his right eye, that he would be paid $11 per week for 100 weeks, that this was the amount allowed by law for the loss of one eye, and that in a short time he would be able to use his left eye as well as ever. Compensation was agreed upon on that basis and payments were made at intervals of two weeks. He was required to sign a receipt for each instalment when it was paid. When he received the last instalment his employer's bookkeeper told him to sign a paper, saying it was the same as those he had signed before. This paper was the release already referred to. Dr. Whiting testified that he told Zinken not to go to the expense of employing a lawyer because the law provided a maximum of $1,100 for the loss of an eye, and that the insurance company would pay him this amount voluntarily. There was no other testimony relating to the signing of the agreement for settlement or the release. It is apparent that both parties acted throughout on the assumption that Zinken was legally entitled to receive compensation only for the loss of his right eye. There was no pretence of compensation for the injury to the left eye. Under these circumstances we think the court was clearly right in holding that neither the agreement for a settlement nor the release barred Zinken from asserting his present claim.

3. The amount of compensation to which Zinken was entitled must

be ascertained by referring to the following provisions of the Compensation Act.

Section 8209, G. S. 1913, reading as follows:

"If an employee receive an injury, which, of itself, would only cause permanent partial disability, but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury."

And parts of section 4, c. 209, Laws 1915, reading as follows:

·"(c) For permanent partial disability, the compensation shall be based upon the extent of such disability. In cases included by the following schedule, the compensation shall be that named in the schedule, to-wit:

"For the loss of an eye, fifty per centum of daily wages during one hundred (100) weeks."

"In all other cases of permanent partial disability not above enumerated, the compensation shall be fifty per centum of the difference between the wage of the workman at the time of the injury and the wage he is able to earn in his partially disabled condition, subject to a maximum of eleven ($11.00) dollars per week. Compensation shall continue during disability, not, however, beyond three hundred (300) weeks."

Clause (e) of the schedule provides that the total and permanent loss of the sight of both eyes shall constitute permanent total disability for which compensation shall be paid for a period of 400 weeks.

It was contended in Zinken's behalf, and the court found, that his is a case of permanent partial disability, entitling him to compensation at the rate of $11 per week for 300 weeks. The opposing contention is that at most he was entitled to $11 per week for 100 weeks for the loss of his right eye and to $5.50 per week for the same period for the injury to his left eye. Section 8209, G. S. 1913, as construed in State ex rel. Garwin v. District Court of Cass County, 129 Minn. 156, 151 N. W. 910, is relied upon as support for this contention.

In the Garwin case the workman was blind in one eye and lost the other while engaged in performing the duties of his employment. It was held that he was entitled to receive 50 per cent of his wages for

100 weeks, the amount specifically fixed by the schedule for the loss of one eye. He was compensated on the same basis as though he had been possessed of two normal eyes at the time of the injury and had lost one of them.

The explicit provision of the statute led inevitably to the conclusion reached in that case. But this provision does not fit the case of a workman whose injury destroyed one eye and half of the sight of the other. Under the ruling in the Garwin case, a workman who comes within the scope of section 8209 cannot claim the compensation which is secured to one who has been permanently and totally disabled, but is only entitled to compensation for permanent partial disability. We are now asked to construe the statute to mean that a workman's eyes are to be valued separately—a good eye, in the case of a man earning the wage of Zinken, at $1,100, and an eye which is only 50 per cent efficient, at $550. It would be both narrow and illiberal so to construe it, whereas we have consistently held that it is to be liberally construed in favor of workmen. Dunnell, Minn. Dig. 1916 Supp. § 5854b; State v. Nye, 136 Minn. 50, 161 N. W. 224. Zinken had one perfect and one imperfect eye. Mortar was thrown in both of them and both were burned. At the time when his eyes were thus injured, his eyesight, by reason of the previous injury to his left eye, was a fourth less than normal. His employer is required to compensate him only for the disability caused by the loss of three fourths of his eyesight, without reference to the fact that he is now practically deprived of all power of sight, as a consequence of his previous injury combined with the injury for which his employer is responsible.

Clause (e) of the schedule does not apply, for he has not suffered a total loss of the sight of both eyes, as a result of the injury sustained while in the service of his employer.

In fact he is not blind, for according to the findings he is still "able to have light perception, and get some slight glimpses through a small section of the upper part of the cornea," but he can no longer see sufficiently to do any kind of work.

His employer is liable for compensation for the permanent partial disability suffered by Zinken, and the court so finds. It is also found that the extent of such disability is equivalent to "75 per cent of the loss of both eyes."

143—M. 26

The precise question is this: On what basis is an injured workman's compensation to be determined, when his employer is required to compensate him for the loss of 75 per cent of the normal power of vision?

Such loss must of necessity be occasioned by an injury to both eyes which may not wholly destroy either of them, or may destroy one and reduce the sight of the other one half as was the case here.

On the theory of the petitioner, the basis would be compensation for 100 weeks for the lost eye and for 50 weeks for the other. But on the same theory, if one eye were destroyed and the other deprived of ninety-nine one-hundreths of its power of vision, compensation would be made for but 199 weeks, although the workman would be practically blind, and, as we have already pointed out, for the total loss of sight, the statute provides for compensation for 400 weeks. In many cases the adoption of the theory advanced would lead to results which were manifestly not intended by the legislature.

Attention is called to the clause in the schedule relating to permanent partial disability due to injury to a member, resulting in less than total loss of such member, which is said to lend support to the theory of the petitioners.

In common usage the term "member," as applied to the human body, means the extremities of the body and particularly the arms and legs. See Century Dictionary, under Member.

But if the term as used in the statute is to be taken to mean an eye as well as a hand or foot, the result of the adoption of petitioners' theory would be the same in the cases above referred to for the purpose of illustration.

We conclude, therefore, that compensation in such a case as we have here is not to be made on the basis suggested, but rather under that clause of the schedule which governs in all cases of permanent partial disability not specifically enumerated in the schedule. Zinken is entitled to 50 per cent of the difference between his wages when injured and the wages he is able to earn in his partially disabled condition, subject to a maximum of $11 per week for not more than 300 weeks.

He has been wholly unable to earn any wages since he was injured, hence he is entitled to $3,300 less $1,100 already paid.

The trial court correctly awarded him $2,200, and its judgment is hereby affirmed.