CALVIN J. WOLLEY v. SAMUEL CHAPMAN AND ANOTHER.[1]

July 13, 1928.

No. 26,384.

**Verdict for malicious prosecution sustained.**

1. Defendants *held* liable for damages for malicious prosecution on evidence that, in order to compel another payment for materials already paid for by a contractor, they wilfully proceeded with an unfounded action for the foreclosure of a lien upon the premises of a third person, upon which the contractor had used the materials purchased from the defendants, in connection with which proceeding the defendants advised that, in order to compel a further payment by plaintiff, he be arrested for statutory larceny, his wrongful arrest and imprisonment having followed, as the jury might have found, as a result of the lien action and defendants' advice that he be arrested.

**Question of causal connection for jury.**

2. The question of causal connection *held* to be for the jury, although a period of 14 months elapsed between the giving of the alleged advice

[1]Reported in 220 N. W. 604.

and plaintiff's arrest. That is because during all of that time the action to foreclose the lien was pending, and the arrest was not brought about until, as the jury might have found, it was apparent that it was to be prosecuted to a conclusion unless the desired payment was exacted from plaintiff.

Malicious Prosecution, 38 C. J. p. 497 n. 60; p. 501 n. 14.

See 18 R. C. L. 28; 3 R. C. L. Supp. 777; 4 R. C. L. Supp. 1175; 5 R. C. L. Supp. 969; 6 R. C. L. Supp. 1049.

Defendants appealed from an order of the district court for Hennepin county, Waite, J. denying their alternative motion for judgment or a new trial. Affirmed.

*Daniel F. Foley* and *Einar O. Juel,* for appellants.

*Schwartz & Halpern,* for respondent.

STONE, J.

Plaintiff had a verdict of $2,500 for malicious prosecution, and defendants appeal from the order denying their alternative motion for judgment or a new trial.

Defendant Chapman is sued because of his activities as the agent of his codefendant, the A. Y. McDonald Manufacturing Company, a dealer in plumbing supplies. Plaintiff is a plumber, formerly plying his trade in Minneapolis. In September, 1923, he had been a customer of the McDonald company for some time and was then owing them a substantial sum on open account. He then purchased substantially $200 worth of materials to be installed in the dwelling of one Hast. There is evidence which, if not conclusive, furnishes abundant support for the finding of the jury, implicit in the verdict, that the debt of plaintiff for the materials purchased for the Hast job was paid. Notwithstanding such payment and in a manner which the jury could take to have been wilful, the McDonald company applied the payments for the Hast material in attempted reduction of its general account against plaintiff and in December of 1923 filed a lien statement. We do not stop to distinguish between payments made upon the Hast bill before and those made

after the filing of that lien statement. It is enough that they were made before the commencement of the action to foreclose the lien in October, 1924. That action was not tried until November 25, 1925. Plaintiff was served and retained counsel, but through an alleged misunderstanding or oversight on the part of his attorney, not now necessary to be considered, he was not present or represented at the trial, and the McDonald company proved its case by default. Its evidence was furnished by defendant Chapman. In so far as it went to the alleged nonpayment for the Hast materials, a jury could have believed it deliberately false. But there was no evidence contra; and on December 1, 1925, findings were made in favor of the McDonald company and judgment was ordered in its favor confirming its lien against the Hast premises. Hast paid the amount found due the McDonald company, which dismissed the action without the entry of judgment.

In the meantime there had been negotiations between Mr. Chapman, representing the McDonald company, and Hast. The latter had paid Wolley and had been informed that Wolley in turn had paid the McDonald company. In July or August, 1924, some two months before "they started foreclosure of the lien," Chapman called on Hast for a "settlement." Hast was indignant that he should be asked to settle again. He asked Chapman, "Where do I come out of this?" and the reply was: "You can get your money from Wolley; throw him in jail, he will pay you." Hast also testified that upon his then objecting to the amount of the lien, Chapman replied: "I can file a lien for $10,000 if you [I] want to." Mr. Chapman denies all that, but the jury seems to have found the issue of veracity against him.

October 1, 1925, Hast swore to a criminal complaint against plaintiff, charging a violation of G. S. 1923, § 8491, which makes it larceny for a contractor, with intent to defraud, to use the "proceeds of any payment" on account of an improvement to real estate for any other purpose, while the labor and materials that have gone into the improvement remain unpaid for, than as a payment thereon. December 18, 1925, plaintiff was arrested in Mar-

shall county, to which he had removed from Minneapolis, brought back to the latter city, and there detained in jail for over two weeks. He was finally discharged and the criminal proceedings against him dismissed.

Although the action has some aspects of one for abuse of process or false arrest, it was submitted to the jury as one for malicious prosecution, and in that aspect we must consider it. The distinction is important, because in an action for abuse of process neither the want of probable cause nor the termination of the original proceeding in favor of plaintiff is essential to the cause of action. Grimestad v. Lofgren, 105 Minn. 286, 117 N. W. 515, 17 L.R.A. (N.S.) 990, 127 A. S. R. 566. There, as in cases for false arrest, probable cause or the absence of it goes ordinarily only to the question of damages. 3 Dunnell, Minn. Dig. (2 ed.) § 3730.

We pass without much comment the argument for defendants that before Hast obtained the warrant for plaintiff's arrest he submitted the matter to counsel and proceeded upon the latter's advice. Assuming all that to be true and that Hast's disclosure of the facts to his attorney was frank and complete, we fail to see where any help can be derived by defendants from the facts so assumed. So far as their own agency in the matter is concerned, there is no attempt to put them in the position of a prosecutor who has made a full and fair disclosure to counsel and has proceeded without malice and solely on his advice.

The action being for present purposes one for malicious prosecution, we come next to the question whether the proceedings against the plaintiff have terminated in his favor. That is necessarily a prerequisite to his cause of action. 4 Dunnell, Minn. Dig. (2 ed.) § 5727. The lien case did not result favorably to plaintiff. It was tried, and though his default may have been due to circumstances for which he is not legally blamable, the fact remains that the issue was tried and determined against him. The action was not dismissed in the ordinary sense, but was disposed of by settlement, Hast paying the amount found due (erroneously, the present record makes it appear) to the McDonald company. But the lien action

and its termination are not the gist of plaintiff's cause of action. Plaintiff resorts to that case only as a preliminary step and an inducement of the criminal prosecution which followed and in which, under plaintiff's theory, defendants were a moving agency. On that hypothesis, the termination of the lien action favorably to plaintiff was not prerequisite to his present action. The gist of that is the unfounded criminal proceeding which did terminate in his favor by an unqualified dismissal.

1. We come then to the determinative question, which for lack of any more convenient or justifiable term, we refer to as one of proximate cause. The lien action never reached the judgment stage, and the findings and conclusions of law therein were not and are not now binding upon anyone. They do not for the purpose of this action estop plaintiff from claiming that advantage was taken of his absence from the trial to prove a lien by perjured testimony deliberately given for the purpose, as already suggested, of saving for the benefit of the general account of the McDonald company against him his payment for the Hast materials; and to enable it to enforce a lien accordingly and compel another payment. The proof in support of that theory, with the advice given to Hast by Chapman, which was susceptible of the construction that Hast should force another payment from plaintiff by having him arrested, makes the problem of proximate cause comparatively simple. There is no necessity for speculating in the doubt strewn field of what might have been contemplated, for the arrest of plaintiff must have been in the express contemplation of Chapman if, as Hast testifies, he advised that arrest. "That which a man actually foresees is to him, at all events, natural and probable." Drum v. Miller, 135 N. C. 204, 47 S. E. 421, 65 L. R. A. 890, 899, 102 A. S. R. 528.

2. The strongest argument for defendants is put upon the fact that Chapman's alleged advice to Hast that Wolley be arrested to compel further payment was given in July or August, 1924, and that the criminal complaint was not sworn out by Hast until October 1, 1925, at least a year afterwards. That lapse of time might be an insurmountable obstacle to the inference of causal connec-

tion if it stood alone. But it is only a part of the picture. The lien statement was then of record against the Hast premises. Its foreclosure had been threatened, and doubtless Hast considered it as possible if not actually impending. The action to foreclose it was started soon after his conversation with Chapman. The jury could well conclude that Hast kept in mind all along Chapman's attitude and advice but that he was not disposed to act upon the latter until it was clear the McDonald company was going to proceed with its action and fix its lien upon his property. The inference is entirely reasonable that when he became sure of that, and not until then, Hast proceeded to have plaintiff arrested.

We have examined the assignments of error not covered by the foregoing discussion and find in them nothing justifying much additional comment. The learned trial judge with great care explained the case to the jury. There was no suggestion from counsel at the time of an inadvertent error or omission. The burden was put upon plaintiff all the way through to establish the case according to his own theory. The issue of veracity as between Hast and Chapman was explicitly submitted. The jury were told that they could not find for plaintiff unless he had shown to their satisfaction "that Chapman * * * knew or had reasonable cause to believe that if the lien was established *. * * Hast would institute a criminal prosecution against" plaintiff. Their silence at the time indicates very strongly that counsel considered that nothing more was needed, even upon the question of proximate cause.

Order affirmed.