**WASHINGTON TERMINAL CO. v. HOAGE et al.**

No. 6407.

United States Court of Appeals for the District of Columbia.

Argued May 9, 1935.

Decided June 29, 1935.

Rehearing Denied July 22, 1935.

George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., and Henry R. Gower, all of Washington, D. C., for appellant.

Leslie C. Garnett, Henry A. Schweinhaut, and Claude A. Thompson, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

In this case the Washington Terminal Company appeals from an order of the Supreme Court of the District of Columbia dismissing its bill of complaint brought to set aside or modify an award of compensation made by the deputy commissioner of compensation to its employee, Hubert M. Poff, under the Workmen's Compensation Law of the District. Longshoremen's and Harbor Workers' Compensation Act, c. 509, 44 Stat. 1424, as amended by the act of May 26, 1934, 48 Stat. 806, 33

U. S. C. § 901 et seq. (33 USCA § 901 et seq.), as made applicable to the District of Columbia by the act of May 17, 1928, c. 612, 45 Stat. 600, D. C. Code 1929, tit. 19, §§ 11, 12 (33 USCA § 901 note).

The award in question was made by the deputy commissioner as compensation for an injury to the employee's eyes, suffered by him in the course of and growing out of his employment.

The company commenced the present case by filing a bill of complaint in the lower court under section 22 of the act, as amended (33 USCA § 922), alleging a change in the condition of the injured eyes of the employee brought about by the use of eyeglasses, and praying the court to set aside the award in whole or in part and to direct the deputy commissioner to reduce the amount thereof in accordance with the improvement in the actual earning capacity of the employee by the improvement in the condition of his eyes.

The deputy commissioner filed a motion in the lower court to dismiss the bill of complaint for want of merit; the court sustained the motion and dismissed the bill, whereupon the present appeal was taken.

The allegations set out in the plaintiff's bill of complaint filed in the lower court are in substance as follows: That the Washington Terminal Company is a common carrier subject to the provisions of the compensation act, supra, and the company has qualified under the act as a self-insurer; that on June 15, 1932, Poff was in the employ of the company as a machinist's helper and on that day while he was engaged with the machinist in dismantling a certain ammonia pump in the ice plant of the company, and was removing the head of the pump, a small quantity of ammonia gas escaped from it and struck him in the face, causing serious injury to his left eye and a less serious injury to his right eye; that Poff thereupon filed his application for compensation under the act because of the injuries thus received by him, and at a hearing had before the deputy commissioner on March 7, 1934, a report of Dr. Gookin, an eye specialist who treated Poff, was filed containing the following statements:

"On December 28, 1932, I came to the conclusion that this patient could not be helped any longer by me in his left eye, he had Snellen 20/200 for distance and 14/140 for near giving him a 20 percent permanent visual efficiency and a 75 percent loss of his visual fields. In his right eye he had 20/40 and 14/35 for near which gave him 76.5 percent visual efficiency and a 25 percent loss in his visual fields."

That Dr. Gookin when preparing this report made no test of the employee's eye with glasses, nor did he make any suggestion at any time during his treatment that the sight of Poff's eyes could be benefited by the use of glasses; that no other evidence was offered as to the condition of Poff's eyes at that time, and thereafter on April 5, 1934, the deputy commissioner made his findings of fact and award containing in part the following statement:

"That as a further result of the injury the claimant has a permanent partial disability of 100 percent loss of vision of the left eye and in addition thereto has a permanent partial disability equivalent to 25 percent of such disability as he would have sustained had he lost the vision of his right eye; for which under section 8 (c) (19) of the act [33 USCA § 908 (c) (19)] he is entitled to compensation for 200 weeks at $16.35 per week; that the claimant is entitled to compensation for temporary total disability in excess of that provided in section 8 (c) (19) of the act for 8.14 weeks and for permanent partial disability for 100 percent of loss of vision of left eye, and 25 percent loss of vision to the right eye, for a period of 200 weeks, making a total period of disability of 208.14 weeks; that compensation for 208.14 weeks at $16.35 per week amounts to $3,403.09; that compensation has accrued from June 15, 1932, to and including March 20, 1934, a period of 92 weeks at $16.35 per week, amounting to $1,504.20, which amount is due and payable forthwith."

That the company paid to Poff the compensation due him under the award as the same became due and payable; that after March 7, 1934, the date of the hearing, Poff consulted another eye specialist who determined that he would be greatly assisted in the sight of both eyes by the use of proper glasses, and he prescribed such glasses for him, with the result that when using them Poff's right eye possessed almost perfect vision, and his left eye possessed 50 per cent. of normal vision; that on April 20, 1934, Poff made an application to the company for re-employment and was examined by the company's physician, who after testing his vision with glasses certified that he was qualified to be restored to duty, and he was thereupon re-employed at an increased wage; that the company

claimed that inasmuch as the sight of Poff's right eye was restored almost completely by the use of glasses, and the sight of his left eye to 50 per cent. normal, the deputy commissioner under paragraph 22 of the compensation act should grant a hearing for the modification of the award theretofore made; that the deputy commissioner thereupon granted a rehearing on May 28, 1934, and thereafter made a finding of facts and order holding that the testimony showed no improvement in the visual efficiency of Poff's eyes without the use of glasses since the date of the first hearing, and denying the company's prayer for a modification of the original award, stating in part as follows:

"The alleged change in conditions was supposedly based upon medical evidence as a result of an examination subsequent to the date of the issue of the above compensation order. After due notice of hearing, both parties of interest having been represented by counsel, a hearing was held on May 28, 1934; at the said hearing the employer asked for a modification of the said award on the ground that the claimant's physical condition with reference to the loss of vision in his eyes upon which the above compensation order was based and for which award was made, had improved by reason of the fact that he had secured glasses and that he is able to carry on his employment.

"It is found that the employer did not furnish to the claimant glasses or any equipment for the purpose of restoring his visual efficiency, that the claimant secured the glasses at his own expense in order that they might assist him in his vision and that the medical evidence indicated that there has been no improvement in the visual efficiency of his eyes without the use of glasses since the date of the last hearing and that the condition of the claimant's eyes at this time is the same as they were at the time of the issue of the original order; that the employer herein has failed to establish by evidence that there has been any change in the physical condition of the claimant or that there has been an improvement in his visual efficiency since the date of the last order, or that the use of glasses which the claimant purchased to aid in his visual efficiency constitutes a change of condition as provided in sec. 22 of the act."

By an amendment to the bill of complaint filed July 26, 1934, the company alleged that since Poff returned to duty as an employee of the company, and as a result of his seniority in service, he was permitted to work as an oiler, which position nets him a daily wage of $5.20, whereas at the time of his injury he was working as a machinist's helper at a wage of $4.25 per day. "In other words, in addition to the compensation of $65.40 per month allowed him by the deputy commissioner, he now receives a salary 95 cents a day higher than what he was earning before the date of his said injury." It is the claim of the company that, inasmuch as Poff with the aid of glasses is now able to earn, and in fact is earning, higher wages than he received before the accident, he should no longer be entitled to compensation based upon an alleged impairment of his earning capacity.

In section 8 of the act it is provided that compensation for permanent partial disability shall be paid to the employee as follows:

"(b) Temporary total disability: In case of disability total in character but temporary in quality 66⅔ per centum of the average weekly wages shall be paid to the employee during the continuance thereof.

"(c) Permanent partial disability: In case of disability partial in character but permanent in quality, the compensation shall be 66⅔ per centum of the average weekly wages, which shall be in addition to compensation for temporary total disability paid in accordance with subdivision (b) of this section, and shall be paid to the employee, as follows: * * *

"(5) Eye lost, one hundred and forty weeks' compensation. * * *

"(16) Binocular vision or per centum of vision: Compensation for loss of binocular vision or for 80 percentum or more of the vision of an eye shall be the same as for loss of the eye. * * *

"(19) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member. * * *

"(21) Other cases: In all other cases in this class of disability [to wit, permanent partial disability] the compensation shall be 66⅔ per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy

commissioner on his own motion or upon application of any party in interest." 33 USCA § 908 (b) (c) (5, 16, 19, 21).

It is clear that the employee in the present case did not suffer the loss of an eye compensable under subsection (5), supra. It appears, however, that he was entitled to equal compensation as that provided in subsection (5) if he suffered a loss of vision equal to 80 per cent. or more of the vision of either eye. The question, therefore, arises whether the employee in the present case suffered a loss of vision of 80 per cent. or more of either of his eyes. If so, under subsection (16), supra, he should receive compensation equal to that provided in subsection (5) for the loss of an eye. This question must be limited in the present case to the condition of the left eye, inasmuch as the right eye concededly suffered an injury of less than 80 per cent., and such an injury would be compensable only under subsection (19), supra, for proportionate loss of the use of the eye.

The record discloses that there has been no change in the physical condition of Poff's eyes, but nevertheless that by means of the use of properly adjusted eyeglasses he possesses the use of his right eye to the degree of 100 per cent., and of his left eye to the degree of 50 per cent., normal vision.

The question therefore arises whether Poff's vision when using eyeglasses shall be taken as the basis for determining his loss of vision under subsection (16), supra, or whether the vision of his eye without glasses should control. The deputy commissioner adopted the latter view and held that Poff had suffered "a permanent partial disability of 100 per cent. of loss of vision of the left eye and, in addition thereto, has a permanent partial disability equivalent to 25 per cent. of such disability as he would have sustained had he lost the vision of his right eye."

In our opinion this decision was erroneous for the reason that the deputy commissioner, when passing upon the extent of Poff's vision, should not have excluded from consideration the assistance which he could receive from the use of glasses.

The use of eyeglasses as an aid to vision is so commonly understood and employed that no person would be considered as having lost 80 per cent. of his vision if at the same time by the use of glasses he would possess 50 per cent. of normal vision. Therefore, according to the reasonable construction of the statute, it should be held that one possessing 50 per cent. efficiency of vision in an injured eye when using glasses cannot be classified as having lost the use of 80 per cent. of the vision of such eye.

It must be remembered that the award payable to the employee under the statute is for "disability" which means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment (section 2, subsec. 10 of the act, 33 USCA § 902 (10). The intention of the law is to provide compensation for loss or disability in earning power and not indemnity or damages for injury to a member of the body. It is consistent with the purpose of that act that the disability of an employee resulting from an injury to his eyes should be considered with reference to the benefit resulting from the use of glasses.

It is true that the authorities are not uniform upon this question, partly owing to differences in the controlling statutes. But we think that the greater weight of authority is with the view above expressed.

In Frings v. Pierce Arrow Motor Car Co., 182 App. Div. 445, 169 N. Y. S. 309, 311, it was held that a claimant whose injured eye is rendered normal by the use of a glass, but can only be used by closing and not using the other eye, has not sustained a permanent loss of the use of an eye within the meaning of subdivision 3 of section 15 of the Workmen's Compensation Law (Consol. Laws, c. 67). This section was then identical in terms with subsection (16), supra, of the D. C. Compensation Act. Lyon, J., in rendering the opinion, said: "Unquestionably, when the lens of the eye was destroyed, the use of the eye, unaided, was lost. It was only by providing an artificial lens outside the eye that the image could be so thrown upon the retina as to restore the sight. The retina was not destroyed, and through the use of an artificial lens the eye, so far as its use alone was concerned, could fulfill the natural function of an eye."

In Valentine v. Sherwood Metal Working Co., 189 App. Div. 410, 178 N. Y. S. 494, it was held that an award for the loss of an eye under the Workmen's Compensation Law cannot be sustained where the entire testimony is to the effect that the injured eye, with the aid of a proper glass, is nearly normal for many purposes. The court said: "That there is an injury, and that it detracts from the value of the eye,

there can be no doubt; but it is not the loss of an eye," citing Frings v. Pierce Arrow Motor Car Co., supra.

In McNamara v. McHarg, Barton Co.. 200 App. Div. 188, 192 N. Y. S. 743, it was held in part that defective vision which can be corrected to normal by glasses cannot form the basis of an award, but that it seems that if because of the nature of his employment the claimant cannot use glasses at all times, he might be entitled to an award based on depreciated earnings.

In Bochecchio v. Charnin Contracting Co., 209 App. Div. 619, 205 N. Y. S. 350, it was held that an award for the partial loss of vision cannot be made where it appears that the loss of vision may be overcome by the use of glasses.

In Cline v. Studebaker Corp., 189 Mich. 514, 155 N. W. 519, 521, L. R. A. 1916C, 1139, a claim was made under the Workmen's Compensation Act for compensation to an employee of an automobile company for the loss of part of the sight of the claimant's right eye. It appeared that when using proper glasses the claimant had 50 per cent. of his sight, while without them he had only 10 per cent. Upon this state of facts the court said: "Under these circumstances it seems impossible to say that the injury has resulted in the loss of the eye. The use of glasses is a very ordinary occurrence, both by the young and the old. It is unnecessary to determine whether the loss of 90 per cent. of the sight is substantially the loss of the eye, because that is not the present case. Ninety per cent. of the sight is not lost when it can be diminished to 50 per cent. by the use of common appliances. And it is the duty of the sufferer to minimize the injury as much as he reasonably may."

In Massett v. Armerford Coal Co., 82 Pa. Super. 579, the court said: "The Workmen's Compensation Law of New York is practically the same as ours in that it provides a special schedule of compensation for the loss of certain members, including the eye, and declares that the permanent loss of the use of such member shall be considered the equivalent of its loss. In Frings v. Pierce Arrow Motor Car Co., 182 App. Div. 445, 169 N. Y. S. 309, the facts were almost identical with those in this case, and it was held that they did not justify an award for a fixed period on the basis of a loss of the eye or a permanent injury equivalent to its loss, but en-

titled the claimant, rather, to compensation as provided in the act for such period of time as he was totally or partially disabled. This case was followed in Valentine v. Sherwood Metal Working Co. [189 App. Div. 410] 178 N. Y. S. 494, and in two memorandum opinions reported in [Clowar v. Harrison Const. Co., 190 App. Div. 924] 179 N. Y. S. 914 and [Reardon v. Ward B. Co., 198 App. Div. 962] 189 N. Y. S. 953; so that it may be considered as the law in that state. The Supreme Court in Minnesota has ruled otherwise in Butch v. Shaver, 150 Minn. 94, 184 N. W. 572, but we prefer the reasoning in the New York cases." See, also, Przekop v. Ramapo Ajax Corp., 214 App. Div. 512, 212 N. Y. S. 426; Grammici v. Zinn, 219 N. Y. 322, 114 N. E. 397; Kanzar v. Acorn Manufacturing Co., 219 N. Y. 326, 114 N. E. 398; Marhoffer v. Marhoffer, 220 N. Y. 543, 116 N. E. 379; Travelers' Ins. Co. v. Richmond (Tex. Com. App.) 291 S. W. 1085; United States Smelting, Refining & Mining Co. v. Evans (C. C. A.) 35 F.(2d) 459.

We are of the opinion therefore that the compensation should have been computed under section 8 (c) (21), 33 USCA § 908 (c) (21), and the employee should have been awarded 66⅔ per centum of the difference between the average weekly wages earned by him at the time of the injury and his actual wage earning capacity thereafter in the same or other employment. No injustice could result to the employee from this conclusion.

The decision of the lower court is therefore reversed and the cause is remanded with directions to the deputy commissioner to set aside or modify his award in whole or in part and fix the amount of the employee's compensation in accordance with section 8 (c) (21) as above set out. Subject, however, to the following provisions contained in section 22 of the act, as amended by Act May 26, 1934, § 5 (33 USCA § 922), to wit: "Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, an award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the depu-

ty commissioner with the approval of the commission."

Reversed and remanded.

HITZ, Associate Justice.

I concur in the conclusion of the court, except in so far as it may be taken, if at all, to authorize a retroactive modification of the award requiring the injured man to refund, or in any manner make allowance for. moneys paid to him before such modification is fixed by the deputy commissioner. If any mistake was made in the matter, it was not his mistake; but it was his activity and diligence in seeking further advice that revealed the possibility of improving his condition, to the benefit of all persons concerned, and he should not in any wise be penalized therefor.

When improvement came to him, he disclosed it to his employer submitted to medical examination by its physician and applied for his previous job whereas he might have sought employment elsewhere, or done no work at all. For such straightforward conduct, he should not now be punished retroactively because it has been decided that the inadvertence of a physician or the error of a deputy commissioner may have inured to his financial benefit until his own activity threw a new light upon the situation resulting in a reduction of his allowance. I am, therefore, of opinion that he is entitled to the treatment of the "most favored nation" under the statutory provisions and practice controlling the matter.