## J. W. FOSTER v. JULIUS SCHMAHL.[1]

June 26, 1936.

No. 30,850.

[1]Reported in 268 N. W. 631.

*Austin & Wangensteen,* for relator.

*Harry H. Peterson,* Attorney General, and *Louis F. Soukup,* for respondent.

HILTON, JUSTICE.

*Certiorari* to review an order of the industrial commission denying appellant compensation from the special compensation fund provided for in the workmen's compensation act for those sustaining total permanent disability.

Appellant claims that as a result of two injuries to his eyes, one sustained in 1923 and the other in 1925, while in the employ of the village of Hibbing, he has become totally and permanently disabled. Appellant is about 70 years of age. He was a painter by trade, although he had done work of other types during the last ten years.

The only question we need consider is whether the finding of the referee, subsequently adopted by the industrial commission, that the appellant is "not permanently and totally disabled" is sufficiently supported by the evidence.

It is conceded that appellant is partially disabled and that he received compensation therefor.

1 Mason Minn. St. 1927, § 4274(e), defines total and permanent disability as:

"The total and permanent loss of the sight of both eyes * * * or any other injury which totally incapacitates the employe from working at an occupation which brings him an income, shall constitute total disability."

Appellant has not suffered "the total and permanent loss of the sight of both eyes." In construing that portion of the act in Zinken v. Melrose Granite Co. 143 Minn. 397, 401, 173 N. W. 857, 859, this court stated: "In fact he is not blind, for according to the findings he is still 'able to have light perception, and get some slight glimpses through a small section of the upper part of the cornea.'" Appellant's eyes were not as badly affected as those considered in

that case, for all of the witnesses here testified that he had enough vision at least to distinguish objects.

Appellant claims, however, that he is disabled within the meaning of that part of subd. (e) to the effect, "or any other injury which totally incapacitates the employe from working at an occupation which brings him an income, shall constitute total disability."

Without the aid of glasses appellant is industrially blind, for all practical purposes. However, with due deference to eminent authority to the contrary (see McDonald v. State Treasurer, 52 Idaho, 535, 16 P. (2d) 988; compare cases collected in 8 A. L. R. 1330; 24 A. L. R. 1469; 73 A. L. R. 706, 716), it seems unreasonable to hold that a man is industrially blind merely because he may be so without the aid of glasses, especially in view of their very common and extremely convenient use. A large percentage of our populace, both in the professions and in the trades, must resort to the use of glasses even in the normal course of events in order to enable them to carry on their work. Such people are not totally disabled by any means. There can be no plausible reason for so considering a person who has been forced to wear glasses as the result of an industrial accident. The view here adopted was well stated in Travelers' Ins. Co. v. Richmond (Tex. Civ. App.) 291 S. W. 1085, 1086:

"For such a case as that before us science has devised appliances which, in substantial part at least, supply the destroyed parts of the agency which nature designed. Through those artificial means, or through those means employed in aid of nature, the sense functions. A solecism exists in a declaration that that which may be recovered is lost, and there is manifest contradiction of terms in saying that a sense, or emotion, which is merely suspended in whole or part for a time and which becomes active again is permanently lost."

For that matter, appellant wore glasses 10 to 15 years prior to the time of his first injury.

It is insisted that this court in Butch v. Shaver, 150 Minn. 94, 184 N. W. 572, adopted the rule that "compensation for the loss of

vision should be determined without resort to correction by glasses." We do not so construe the holding of that case. In it this court only sustained a finding of the trial court that there was a total loss of vision of one eye. If there be an implication of the adoption of the foregoing quoted rule, this court now must depart therefrom.

Appellant claims that even with the aid of glasses he is totally and permanently disabled.

Dr. Charles N. Spratt, called as a witness on behalf of appellant, testified:

Q. "That rate of vision in connection with the left eye, is that fairly good vision?

A. "It is ordinarily listed about 60 per cent.

Q. "So that vision in that eye is not a total loss of vision?

A. "With his glasses it is not.

       \*    \*    \*    \*    \*    \*    \*

Q. "In your opinion, would an operation on either one or on both eyes improve the condition?

A. "The left eye might be improved, but he has had nine operations so far, and there is always the possibility in an irritable eye such as this man apparently has had of doing any more operating and stirring up trouble.

Q. "There is a possibility an improvement may be had in that eye, however?

A. "Yes.

       \*    \*    \*    \*    \*    \*    \*

Q. "With that vision would he be able to perform some manual labors?

A. "Yes, some manual labor, but not very useful."

Dr. H. W. Grant, called as a witness on behalf of respondent, testified:

A. "In the left eye the operation has been very successful. Vision of 20/40 after operation is a very acceptable vision and represents only about 20 per cent below normal. I believe this vision might be further improved by a needling operation if the lense were changed and the 20/40 vision was not satisfactory. With a read-

ing glass he is able to read print of 60/200, which is one type smaller than newsprint. With that amount of vision they usually read the newspaper, and it is entirely possible that with the correct lense on there he would not require any further operation if he was satisfied to get along with the ability to have 80 per cent of vision and read the newspaper.

\*　\*　\*　\*　\*　\*　\*

Q. "Have you an opinion as to whether or not Mr. Foster [appellant] has any semblance of permanent total loss of vision?

A. "I don't see how he could have  \*  \*  \*.

Q. "You heard some testimony here by the other doctor for Mr. Foster as to the kind of work that Mr. Foster may be able to perform; you have heard the doctor testify that he did not think he could perform the regular manual labor but it would be casual labors; what is your opinion as to that?

A. "I think he certainly would be able to perform the work of a janitor as he was doing at the time the so-called accident occurred.

Q. "You think he could perform those duties?

A. "Yes.

Q. "Do you think he could do any painting?

A. "I think he could do rough painting.

\*　\*　\*　\*　\*　\*　\*

Q. "So on the question of disability you undertake to make no statement?

A. "My opinion is that a person who has 20/40 vision in one eye, which is 80 per cent of vision either with or without a glass, should not be considered as a person who is disabled from all further work.  \*  \*  \*

Q. "Doctor, as I understand your testimony under direct examination, it is your opinion that this man, Mr. Foster, has not a permanent total loss of vision; am I correct?

A. "Yes.

\*　\*　\*　\*　\*　\*　\*

Q. "One more thing: About this janitor business, are you sure he told you he was a janitor? Wasn't he foreman at the—

A. "He was a foreman at the incinerator, yes. I just assumed that. I don't know what his duties comprised."

Since appellant sustained the second of his injuries, sometime in 1925, he has had several part-time positions. In 1929 he worked for the village of Hibbing for nine months as a sort of caretaker of the skating rink in the winter and of the ball park during the summer. In answer to the question whether he "could do that kind of work now," appellant answered, "Yes, I could."

The testimony throughout was conflicting. Although this court, were it sitting as a fact-finding body, might have reached a result contrary to that of the industrial commission, in light of the foregoing evidence it hardly can be said that there is not sufficient evidence to support its finding. Where the commission has a choice between conflicting evidence or where diverse inferences may be drawn from the evidence, its conclusions should stand. Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913; Smith v. Mason Brothers Co. 174 Minn. 94, 218 N. W. 243; see Johnson v. Nash-Finch Co. 197 Minn. 616, 268 N. W. 1. The fact that appellant has been unable during the past five or six years to secure employment cannot in and of itself be held to constitute conclusive proof that he is totally disabled from so doing for the reason that during that period there have been many contingent factors that might have had an adverse effect on appellant's ability to find a position. Compare Reilley v. Carroll, 110 Conn. 282, 147 A. 818.

The position here adopted is not contrary to State ex rel. Casualty Co. v. District Court, 133 Minn. 439, 441, 158 N. W. 700, 701, for there, as here, the rule was followed that: "What is permanent total disability is largely a question of fact, and must depend upon the circumstances of each particular case." To the same effect is Jones v. Fidelity & Cas. Co. 166 Minn. 100, 207 N. W. 179.

One of the assignments of error is: "The commission erred in permitting one of its employes to appear as attorney on appeal before the commission in the hearing on appellant's claim." There is nothing in the record to support that assignment, nor does it appear, assuming that such was a fact, that appellant made any objection

▮▮▮▮▮▮▮▮▮

at the time of the hearing. Litigants cannot sleep on their rights until they reach this court and then, for the first time, object to an irregularity occurring in the tribunal below. Such objections must be timely or they are waived.

Holding, as we do, that the findings have sufficient support in the evidence, the other questions raised need not be considered.

Affirmed.

