**Lorne W. WASSON**

v.

**NORTHEAST MOTOR CO., Inc., et al.**

Supreme Judicial Court of Maine.

May 6, 1969.

Bishop & Stevens, by James A. Bishop, Richard C. Engels, Presque Isle, for plaintiff.

Robinson, Richardson & Chapman, by Clement F. Richardson, Portland, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEBBER, Justice.

Respondents appeal from the pro forma Superior Court confirmation of a decree of the Industrial Accident Commission awarding compensation to the petitioner for partial loss of vision in his right eye. As the result of an industrial accident on March 17, 1964 the vision in the injured eye was reduced to 20/50 without glasses, but as corrected with glasses it remained 20/20. The Commission based its award upon the loss of vision uncorrected.

39 M.R.S.A. Sec. 56 on March 17, 1964 contained the following language pertinent here:

"In cases of injuries included in the following schedule the incapacity in each such case shall be deemed to be total for the period specified; and after such specified period, if there be a total or partial incapacity for work resulting from the injury, the employee shall receive compensation while such total or partial incapacity continues under sections 54 and 55 respectively. The specific periods during which compensation for presumed total incapacity is to be paid because of the injuries hereinafter specified shall be as follows:

\*  \*  \*  \*  \*  \*

For the loss of an eye, or the reduction of the sight of an eye, *with glasses*, to 1/10 of the normal vision, \*  \*  \* 100 weeks. \*  \*  \*

In all other cases of injury to the above mentioned \*  \*  \* eyes \*  \*  \* *where the usefulness of any physical function* thereof is permanently impaired, the specific compensable periods for presumed total incapacity on account thereof shall bear such relation to the periods

above specified as the percentage of permanent impairment due to the injury to such * * * eyes * * * shall bear to the total loss thereof." (Emphasis ours.)

The issue is whether or not the petitioner with normal vision when aided by the use of glasses is entitled to an award for any period based on presumed total incapacity within the meaning and intent of Sec. 56.

In Cook v. Colby College (1959), 155 Me. 306, 310, 154 A.2d 169, 171, although the case dealt with the loss of an eye, the Court had occasion to consider the purpose and policy underlying our Workmen's Compensation Act. These significant observations were made:

"The basic purpose of the Workmen's Compensation Act is to provide compensation for loss of earning capacity from actual or legally presumed incapacity to work arising from accidents in industry. * * * 'In compensation, unlike tort, the only injuries compensated for are those which produce disability and thereby presumably affect earning power.' Larson, Workmen's Compensation, § 2.-40. * * * Loss of earning capacity comes from loss of use, not from loss in the sense of removal of the eye.

\* \* \* \* \* \*

The theory of the scheduled injuries is that the claimant 'has sustained a distinct loss of earning power in the near or not remote future.'

The relationship of *loss* to *loss of use* in terms of presumed total incapacity has thus been completely established since 1929. It is a further recognition that it is *loss of use*, not loss or removal in itself that brings about loss of earning capacity."

An examination of the decisions from other jurisdictions reveals that there exists a split of authority with respect to the consideration to be given to correction by the use of glasses in determining the compensable loss of vision in industrial accident cases. The controversy has centered almost entirely, however, upon the construction of statutes which, unlike ours, contain no reference to correction "with glasses." Authorities standing on both sides of the issue tend to agree that the apparent conflict in reality stems primarily from the wording of differing statutes.

A few of the more recent cases will serve to illustrate the difference in approach to the problem.

In Hollman v. City of Raleigh, Pub.U. Dept. (1968), 273 N.C. 240, 159 S.E.2d 874, 881, where the injured workman suffered a substantial loss of vision but retained 20/20 or normal vision with the use of corrective glasses, the Court said:

"Nothing in the North Carolina statute indicates an intention on the part of the General Assembly that glasses or corrective lenses should be considered in determining the loss of the whole or a fractional part of the vision of an eye. If the purpose of the statute is to compensate for a specific loss of partial vision, as is the case with our statute, naked vision, alone, should be considered, but if the purpose of the statute is to compensate only *for loss of earning power,* which is not the case with us, *the corrected vision should be a factor. The conflict in the states' decisions is more apparent than real being due in many instances to differences in the controlling statutes.*" (Emphasis ours)

Dealing with a similar problem, the Court in Burdine's v. Green (1942), 150 Fla. 361, 7 So.2d 460, 461 said:

"The authorities are not in harmony on the method of fixing the amount of the recovery in such circumstances but at the outset it is noteworthy that the Supreme Court of W[est] V[irgini]a in the case of Pocahontas Fuel Co. v. Workmen's Compensation Appeal Bd., 118 W. Va. 565, 191 S.E. 49, observed that the statute of that state contained nothing

that showed an intention of the legislature that the use of eye glasses should be considered in determining the amount of an award for injury to the claimant's eyes. That is equally true in Florida and although it might appear upon cursory examination to be a practical means of arriving at the compensation to be allowed *there is no express authority for it.*" (Emphasis ours)

The opposite view, resting on the construction of a statute which made no reference to correction with glasses, was taken in the leading case of Washington Terminal Co. v. Hoage (1935), 65 App.D.C. 33, 79 F.2d 158, 161. The Court said:

"The use of eyeglasses as an aid to vision is so commonly understood and employed that no person would be considered as having lost 80 per cent. of his vision if at the same time by use of glasses he would possess 50 per cent. of normal vision. Therefore, according to the reasonable construction of the statute, it should be held that one possessing 50 per cent. efficiency of vision in an injured eye when using glasses cannot be classified as having lost the use of 80 per cent. of the vision of such eye.

It must be remembered that the award payable to the employee under the statute is for 'disability' which means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment (citing statute). *The intention of the law is to provide compensation for loss or disability in earning power* and not indemnity or damages for injury to a member of the body. *It is consistent with the purpose of that act that the disability of an employee resulting from an injury to his eyes should be considered with reference to the benefit resulting from the use of glasses.*

It is true that the authorities are not uniform upon this question, partly owing to differences in the controlling statutes. But we think that the greater weight of authority is with the view above expressed." (Emphasis ours)

In a case in which it was to the claimant's advantage to have the statute so construed as to measure the loss of vision by comparing visual capacity as corrected by the use of glasses before and after the injury, the Court so held in Lambert v. Industrial Commission (1952), 411 Ill. 593, 104 N.E.2d 783, 788. Analyzing the conflict in authority, the Court noted that many of the differences are due to the variation in the wording of statutes, while others stem from differing judicial interpretations of the purpose of the statute, particularly as between compensation for a specific loss and compensation for the loss of earning power. The Illinois statute was silent with respect to the use of corrective glasses. The Court quoted with evident approval from Foster v. Schmahl (1936), 197 Minn. 602, 268 N.W. 631, 632 in which it was stated:

"A large percentage of our populace, both in the professions and in the trades, must resort to the use of glasses even in the normal course of events in order to enable them to carry on their work. Such people are not totally disabled by any means. There can be no plausible reason for so considering a person who has been forced to wear glasses as the result of an industrial accident."

To the same effect, Piper v. Kansas Turnpike Authority (1968), 200 Kan. 438, 436 P.2d 396.

Only one case has come to our attention in which the Court interpreted a statute containing a specific reference to "vision with glasses" as not requiring consideration of the corrective effect of glasses in determining compensable loss of vision. In Shaw v. Rosenthal (1942), 112 Ind.App. 468, 42 N.E.2d 383 the claimant's impairment was 30% without glasses but only 10% with glasses. The statutory schedule provided: "For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision with glasses, one

hundred and fifty (150) weeks, and for any other permanent reduction of the sight of an eye, compensation shall be paid for a period proportionate to the degree of such permanent reduction." In a brief opinion the Court concluded that the second provision did not refer to vision with glasses and that the fixed compensation for specific injuries was based on actual physical loss and not on loss of earning capacity. That the Indiana Court would have reached any different result if the wording of its statute had been identical to ours is by no means clear. We do note, however, that where the Indiana statute speaks of "any other permanent reduction of the sight of an eye," the Maine statute uses the words, "all other cases of injury to the above mentioned * * * eyes * * * where the *usefulness* of any physical function thereof is permanently impaired." (Emphasis supplied) The word "usefulness," connoting loss of industrial usefulness and loss of earning capacity, is significantly missing from the Indiana statute. More importantly, however, the Indiana Court has not construed this portion of its statute as resting on the theory of loss of use and loss of earning capacity as has the Maine Court. Cook v. Colby College, supra.

We do not think the second part of the above quoted schedule of compensation in our statute can be read apart from the first portion. The second portion refers to "the above mentioned * * * eyes" which are by the judicial interpretation in Cook eyes which are industrially useful when aided by glasses. We conclude that the appellee whose vision corrected with glasses is 20/20 or normal has not suffered any diminution of the "usefulness" of the "physical function" of his eye within the meaning and intent of the statute so as to entitle him to compensation for any period of "presumed total incapacity."

Appeal sustained. Remanded for the purpose of amending decree in accordance with this opinion. Ordered that an allowance of $350.00 to cover fees and expenses of counsel be paid by the employer to the employee.