Before STATE INDUSTRIAL BOARD, Respondent.

DONATO BOCHECCHIO, Respondent, *v.* CHARNIN CONTRACTING COMPANY and Another, Appellants.

Third Department, June 27, 1924.

**Workmen's compensation — accidental injury to eye — award cannot be made for loss of vision that can be overcome by glasses — case remitted to determine if loss can be overcome by use of glasses.**

An award for the partial loss of vision cannot be made where it appears that the loss of vision may be overcome by the use of glasses.

Inasmuch as there is evidence that the loss of vision suffered by the plaintiff is caused by astigmatism due to the injury and may possibly be overcome by the use of glasses, the case is remitted to the State Industrial Board to determine whether or not with correcting glasses the claimant would have normal vision.

APPEAL by the defendants, Charnin Contracting Company and another, from an award of the State Industrial Board, made on the 2d day of August, 1923.

*Pettigrew, Glenney & Bovard* [*Walter L. Glenney* of counsel], for the appellants.

*Carl Sherman, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

On the 6th day of October, 1922, a small piece of metal flew into the claimant's left eye while he was engaged in his regular employment. A prior award for fifteen weeks for the injury to the eye, $300, was paid and the case continued pending report of an eye specialist. The statements made by Dr. Lewy are simply an interpretation of the report and testimony of Dr. Curtin. It does not appear that Dr. Lewy ever examined the eye. The award is based entirely upon the testimony of Dr. Curtin, who examined claimant at the request of the Industrial Board. He made a report in which he said; " I am of the opinion that this claimant has no disturbance of his binocular vision; that his vision in the left eye is from my test 20/30; and that the scar in the cornea is not in the interpupillary space and does not interfere with his vision." In his testimony he said that the scar caused a slight opacity, but it was outside the pupillary area; that from his test there was a slight astigmatism due to this opacity. His opinion was that the opacity did not interfere with claimant's vision. He states that the man was a malingerer and no reliance could be placed upon his answers to inquiries as to his sight. Dr. Curtin's tests proved that claimant's answers were unreliable. By these tests, however, he found that he could read twenty-thirtieths, while by claimant's answers to inquiries by the doctor he could only see twenty two-hundredths. He found the eye sound in all respects, except this slight opacity. As a result of his examination and tests he puts the loss of vision at twenty-thirtieths, but declares that he can find nothing in the eye which interferes with his vision, at the same time stating that the astigmatism causes a slight loss of vision.

Dr. Gulliver, called by the carrier, found this slight opacity located below the pupillary area. He had an X-ray taken. In his opinion the eye had normal vision.

Where the loss of vision may be corrected by the use of glasses no award for the defect should be made. (*McNamara* v. *McHarg, Barton Company,* 200 App. Div. 188.) Dr. Curtin's conclusion from his tests that there was a loss of twenty-thirtieths of vision

was without any correction with glasses; he attempted no such correction because the answers of the claimant were unreliable. Dr. Curtin also says that, if an oculist actually found he had normal vision with correcting lenses, he would not dispute the fact.

The case should be remitted to the State Industrial Board for further proof and particularly to determine whether or not, with correcting glasses, the claimant would have normal vision.

All concur; COCHRANE, P. J., being also of the opinion that there is no evidence connecting the alleged defective vision with the accident in question.

Award reversed and claim remitted to the State Industrial Board, with costs to appellants against said Board to abide the event.