**GULF STEVEDORE CORPORATION and Texas Employers' Insurance Association**

v.

**Lee H. HOLLIS, Deputy Commissioner, and Gabelus Picard.**

**No. 68–H–558.**

United States District Court
S. D. Texas,
Houston Division.
March 19, 1969.

---

Ed Bluestein, Jr., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for plaintiff.

Jack Shepherd, Asst. U. S. Atty., Houston, Tex., for defendant Deputy Commissioner.

Sidney Ravkind, Mandell & Wright, Houston, Tex., for defendant Picard.

SINGLETON, District Judge.

## MEMORANDUM AND ORDER

This is an appeal by plaintiffs, Gulf Stevedore Corporation and Texas Employers' Insurance Association, seeking reversal of a compensation order awarding disability benefits to Gabelus Picard (claimant) for the loss of his right eye. The cause arises upon a complaint to review and set aside as not in accordance with law the compensation order filed by the defendant deputy commissioner on June 24, 1968, pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 901 et seq. (1957).

Defendant deputy commissioner counterclaims for a declaratory judgment that the compensation order of June 24, 1968 is in all respects in accordance with law and fully supported by evidence, and that plaintiffs are liable to claimant Picard for the amounts specified in the compensation order, together with twenty per cent additional compensation under 33 U.S.C. § 914(f), for delayed payment. The deputy commissioner further seeks judgment awarding a mandatory injunction against plaintiffs, enjoining upon them full compliance with the compensation order and with 33 U.S.C. § 914(f). This cause is now before the Court on cross motions for summary judgment filed by plaintiffs, the deputy commissioner, and claimant.

Claimant was employed by plaintiff, Gulf Stevedore Corporation, as a longshoreman. He was working aboard the S. S. PANAGHIA THEOSKEPASTI, which was moored in the navigable waters of the Houston Ship Channel. Claimant was struck in the eye by a rope. As a result of this accident claimant's right eye was injured.

On May 29, 1968, a formal hearing was held before the deputy commissioner to determine the compensation due Picard under the Longshoremen's and Harbor Workers' Compensation Act. The deputy commissioner, based upon the record made before him at the hearing, found that as the result of an employment injury to the right eye on September 21, 1964, claimant was entitled to benefits for temporary total disability from September 22, 1964, to November 19, 1964; for temporary partial disability from November 20, 1964, to December 10, 1964; and for recurrent periods of temporary total disability from December 11, 1964, to February 11, 1968 (less 140⅗ weeks worked). Additionally, the deputy commissioner found that maximum improvement of the condition of claimant's right eye was reached on February 12, 1968, and, based upon a finding that claimant has a permanent loss of vision of approximately 95 per cent, without correction, in that eye, the deputy commissioner awarded claimant compensation for that scheduled loss amounting to 160 weeks as provided in section 8(c) (5) and section 8(c) (16) of the Longshoremen's Act, 33 U.S.C. §§ 908(c) (5) and (16) (1957).[1]

Plaintiff does not challenge the deputy commissioner's findings of temporary total disability (September 22, 1964 to November 19, 1964); temporary partial disability (November 20, 1964 to December 10, 1964); or of recurrent periods of temporary total disability (December 11, 1964 to February 11, 1968). What

---

[1]. Findings of Fact Nos. 18 and 19 of the order were as follows:

"18. The uncorrected visual loss will not improve and for the purpose of determining the scheduled award for permanent total disability of the right eye maximum improvement was achieved on February 12, 1968.

19. Considering the language of the statute the employee is entitled to a scheduled award for loss of vision in his right eye on the basis of vision remaining without a corrective lens."

plaintiff does challenge is the deputy commissioner's determination that claimant has suffered a scheduled loss under section 8(c) (5) and 8(c) (16). Specifically plaintiff complains that the deputy commissioner did not apply the proper legal standard for determining disability to the eye in that he refused to consider corrected vision. Plaintiff further complains that the evidence does not support the finding that claimant's right eye reached maximum improvement on February 12, 1968, since the only doctor who testified was still treating claimant on that date and was hopeful of and expected continued improvement of corrected vision, and since the order itself noted that Picard's condition may improve (Finding No. 15).

■■ If the deputy commissioner's view of the law is the correct one, and he need not consider corrected vision, then his findings are supported by substantial evidence in the record.[2] The instant record discloses that the only medical evidence presented to the deputy commissioner was the testimony of Dr. Conrad D. Moore, a Board-certified Ophthalmologist (Tr. 35) who had treated claimant on behalf of the plaintiff insurance carrier (Tr. 37). Dr. Moore testified that as a result of this injury claimant had contusion angle glaucoma, traumatic iritis, and vitreous and subretinal hemorrhage in the eye; a cataract developed in claimant's eye requiring surgery for its removal; this surgery also involved the removal of the lens from claimant's right eye. (Tr. 43) As a result of the removal of the lens claimant suffered the loss of ninety-five per cent of visual acuity in his right eye. (Tr. 45) The doctor further testified that claimant's eyesight might be restored to normal with the use of a "cataract lens." (Tr. 45) Assuming that the deputy commissioner is not required to consider corrected vision, the testimony supports his finding that claimant suffered a scheduled loss. In addition, the deputy commissioner is justified in determining that claimant's eye had reached maximum improvement on February 12, 1968. Even though there is testimony that claimant was recovering from a postoperative injury, it is clear that without corrective lenses, claimant's visual acuity in the right eye could never exceed five per cent. Therefore, regardless of the status of the postoperative injury at the time of the hearing, claimant would be entitled to compensation for a scheduled loss under section 8(c).

Section 8(c) of the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 908(c)) provides:

"(c) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66⅔ per centum of the average weekly wages, which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with subdivision (b) or subdivision (e) of this section respectively, and shall be paid to the employee, as follows:

\*　\*　\*　\*　\*　\*

"(5) Eye lost, one hundred and sixty weeks' compensation.

\*　\*　\*　\*　\*　\*

"(16) Binocular vision or percentum of vision: Compensation for loss of binocular vision or for 80 per centum or more of the vision of an eye shall be the same as for loss of the eye.

\*　\*　\*　\*　\*　\*

"(21) Other cases: In all other cases in this class of disability the compensation shall be 66⅔ percentum of the difference between his average weekly wages and his wage–earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy com-

---

2. The substantial evidence rule governs the Court's review of any factual determination made by the deputy commissioner. See O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); O'Keeffe v. Smith, Hinchman & Grylls, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965).

missioner on his own motion or upon application of any party in interest."

The initial question the Court must resolve is whether the deputy commissioner's order is in accordance with law. In making an award for a scheduled loss under section 8(c) (16) must the deputy commissioner consider corrective lenses? In support of its contention that the question of corrected vision should be resolved affirmatively, plaintiff relies heavily on the case of Washington Terminal Co. v. Hoage, 65 U.S.App.D.C. 33, 79 F.2d 158 (1935).[3] The Court in *Hoage* held that the assistance of glasses should be considered in determining the extent of the loss of vision. The Court said:

"The use of eyeglasses as an aid to vision is so commonly understood and employed that no person would be considered as having lost 80 per cent. of his vision if at the same time by the use of glasses he would possess 50 per cent. of normal vision. Therefore, according to the reasonable construction of the statute, it should be held that one possessing 50 per cent. efficiency of vision in an injured eye when using glasses cannot be classified as having lost the use of 80 per cent. of the vision of such eye.

"It must be remembered that the award payable to the employee under the statute is for 'disability' which means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment

* * *. The intention of the law is to provide compensation for loss or disability in earning power and not indemnity or damages for injury to a member of the body. It is consistent with the purpose of that act that the disability of an employee resulting from an injury to his eyes should be considered with reference to the benefit resulting from the use of glasses." Washington Terminal Co. v. Hoage, *supra* at 161.

*Hoage* is the only decision of a federal court dealing with the question of corrective lenses.[4]

The deputy commissioner, and claimant of course, contend that corrective lenses need not be considered. They contend that *Hoage* is erroneous when it assumes that "the intention of the law is to provide compensation for loss or disability in earning power and not indemnity or damages for injury to a member of the body."[5] Section 8(c) (5) of the Longshoremen's Act provides that an employee who has lost an eye will be paid 160 weeks' compensation. Compensation is not tied to lost earning capacity. If a workman suffers a loss covered under the "schedule" of specific injuries, then he is to be paid the disability compensation provided for that loss. This is also true of other scheduled losses such as losses of arms, legs, feet, and hands.

■■ Thus, when the scheduled losses are considered, the rationale of *Hoage* is undermined. If lost earning capacity is the only focus of the Act, corrective

---

3. Plaintiff also relies on some vintage New York cases. Bochecchio v. Charnin Contracting Co., 209 App.Div. 619, 205 N.Y. S. 350 (1924); McNamara v. McHarg-Barton Co., 200 App.Div. 188, 192 N.Y. S. 743 (1922); Cortina v. Lathrop & Shea Co., 191 App.Div. 928, 180 N.Y.S. 855 (1920); Valentine v. Sherwood Metal Working Co., 189 App.Div. 460, 178 N.Y. S. 494 (1919); Frings v. Pierce-Arrow Motor Car Co., 182 App.Div. 445, 169 N. Y.S. 309 (1918). The Longshoremen's Act was modeled after the New York statute. *See* Case v. Pilsbury, 148 F.2d 392 (9th Cir. 1945).

Admittedly, state decisions are in conflict on the corrective lens point. Much of the conflict, however, can be explained in terms of the variations in state legislation dealing with the matter. *See* Annot., 142 A.L.R. 822 (1943).

4. Actually Hoage was construing the District of Columbia Workmen's Compensation statute. However, the Longshoremen's Act is the District of Columbia's compensation statute.

5. In most instances the Act is concerned with lost earning capacity. Certainly this is the measure by which an award is determined under section 8(c) (21) (quoted in text).

lenses should be considered, for their use is likely to enhance the claimant's earning capacity. Under a scheduled loss, however, there is a fixed measure of compensation. The award is not governed by earning capacity. In fact, "the Congress has determined that a loss of wage-earning capacity and its extent are conclusively established when one of the enumerated physical impairments is proven to have arisen out of the employment." Travelers Insurance Company v. Cardillo, 225 F.2d 137, 144 (2d Cir.), cert. denied, Ira S. Bushey & Sons, Inc. v. Cardillo, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). Thus, in effect, the claimant is being compensated for loss of the body member, not lost earning capacity. From this perspective, a consideration of corrective lenses would seem to be irrelevant.

■ The Court is convinced that there is merit to the deputy commissioner's contentions. In addition, to follow *Hoage* would be to ignore the usually liberal construction placed on the Longshoremen's Act. *See* Voris v. Eikel, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953). Section 8(c) (16) provides: "Binocular vision or per centum of vision: Compensation for loss of binocular vision or for 80 percentum or more of the vision of an eye shall be the same as for loss of the eye." The language of the statute is clear. In the present case claimant has lost ninety-five per cent of the vision of his right eye. He has suffered a loss under the plain meaning of section 8(c) (16). The statute makes no reference to corrective lenses. To imply the requirement that claimant's injury qualify as a "loss" only if the required percentage of impairment cannot be corrected with lenses, is contrary to the liberality with which the Longshoremen's Act is usually construed. The deputy commissioner's order is in accordance with law and should not be set aside.

■ Having resolved the question of corrective lenses, the Court must now turn to a consideration of the deputy commissioner's counterclaim. The deputy commissioner seeks a mandatory injunction against plaintiffs enjoining upon them full compliance with the compensation order. Section 21(c), 33 U.S.C. § 921(c), provides in part:

"If any employer or his officers or agents fail to comply with a compensation order making an award, that has become final, any beneficiary of such award or the deputy commissioner making the order, may apply for the enforcement of the order * * *."

With respect to the finality of orders section 21(a), 33 U.S.C. § 921(a), provides:

"A compensation order shall become effective when filed in the office of the deputy commissioner * * * and, unless proceedings for the suspension or setting aside of such order are instituted as provided in subsection (b) of this section, shall become final at the expiration of the thirtieth day thereafter."

Since this action was instituted within thirty days after the compensation order, that order has not become final and the Court has no jurisdiction to enforce it.

The Court in Harris v. Briscoe, 94 U.S.App.D.C. 92, 212 F.2d 619 (D.C. Cir. 1954) spoke to this point, saying:

"Although it 'requires' payment, the Deputy Commissioner's award, standing alone, has no coercive effect. And in a review proceeding under § 21(b) the District Court cannot coerce payment of accrued installments, either *pendente lite* or *in a final judgment affirming the award*. By express provision of the Act, the only methods of enforcement available to a beneficiary are those set out in § 21(c) and § 18, each of which requires a *new proceeding* in the District Court, *separate and distinct* from that in which the award is reviewed under § 21(b)." *Id.* at 621. (Emphasis added).

■ In his counterclaim the deputy commissioner also seeks to assess a delay penalty against plaintiffs under sec-

tion 14(f), 33 U.S.C. § 914(f) (1957). Section 14(f) provides:

"(f) If any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation, an amount equal to 20 per centum thereof, which shall be paid at the same time as, but in addition to, such compensation, unless review of the compensation order making such award is had as provided in section 921 of this title and an interlocutory injunction staying payments is allowed by the court as provided therein."

The cases cited by the deputy commissioner to support his claim for assessment of the delay penalty are inapposite. These are all cases where the employer had not procured an interlocutory injunction within the ten day period. *See* Zeller v. Associated Indemnity Corp., 92 F. 2d 453 (9th Cir. 1937); Arrow Stevedore Corp. v. Pillsbury, 88 F.2d 446 (9th Cir. 1937); Candado Stevedoring Corp. v. Lowe, 85 F.2d 119 (2d Cir.), cert. denied, 299 U.S. 588, 57 S.Ct. 115, 81 L.Ed. 433 (1936); Twine v. Locke, 68 F.2d 712 (2d Cir. 1934). In the present case, however, plaintiffs obtained an order staying payment of the lump sum portion of the award within ten days of the date of the compensation order. The lump sum award was for the permanent partial disability under section 8(c) (16). The deputy commissioner makes no allegation that plaintiffs have failed to pay the weekly compensation payments required by the order. Under these circumstances, the deputy commissioner's counterclaim for assessment of the delay penalty must be denied.

In sum, the Court determines that the deputy commissioner's order is in accord with law. The Court shall dissolve its prior ruling granting plaintiff a stay in complying with the order of the deputy commissioner. The Court, however, refuses to issue a mandatory injunction or assess a delay penalty under section 14(f).

Therefore, for the above reasons, it is ordered, adjudged, and decreed that the

motions for summary judgment of the deputy commissioner and of the claimant be, and they are hereby, granted. Plaintiff's motion for summary judgment is denied.

The Clerk will notify the United States Attorney to draft an appropriate judgment in accordance with this Memorandum and Order for submission to the Court by April 7, 1969, after first obtaining approval of opposing counsel and counsel for claimant.