703 F.2d 417
 1984 A.M.C. 910
 NATIONAL STEEL & SHIPBUILDING CO., INC., Employer-Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent,
and
William D. McGregor, Claimant-Respondent.
 No. CA 81-7807.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1983.
Decided April 8, 1983.
 
 William H. Taylor, Taylor, Jones & Wilson, San Diego, Cal., for employer-petitioner.
 Laurie M. Streeter, Ralph M. Hartmen and Allen H. Sachel, Washington, D.C., for respondent.
 Petition for Review of an Order Of the Benefits Review Board.
 Before ELY, HUG, and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 National Steel again appeals to us a Benefit Review Board (BRB or Board) decision awarding William D. McGregor benefits for loss of vision in one eye, measured by his uncorrected rather than his corrected vision after the injury. The Director in turn contends that National Steel has not appealed from a "final order" of the BRB and that the BRB computed the benefits under the proper legal standard. We find that we have jurisdiction to consider the petition and we uphold the decision of the Board.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 McGregor, a welder for National Steel, injured his right eye on June 5, 1973. He applied for benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 908(c) (1979) (Act). At the initial hearing before an administrative law judge (ALJ), the evidence showed that McGregor suffered a loss of over 80% of his uncorrected vision in the injured eye; with glasses, however, his loss of vision was reduced to 50%. Under section 8(c)(16) of the Act, 33 U.S.C. Sec. 908(c)(16), compensation for loss of 80% or more of the vision of an eye is the same as for total loss of an eye; it is fixed by schedule at 160 weeks compensation. Id. at Sec. 908(c)(5). If the award were based on loss of corrected vision, then McGregor would receive a non-schedule award based on his loss of earnings, Id. at Sec. 908(c)(21). That award would be lower than the scheduled award, because McGregor actually did return to work for National Steel in a similar job at the same rate of pay.
 
 
 3
 On May 5, 1977, the ALJ awarded McGregor compensation based on his loss of uncorrected vision. In addition, the ALJ awarded McGregor compensation for a temporary partial disability. National Steel appealed to the BRB, and on March 28, 1978, the Board affirmed the permanent award for loss of uncorrected vision. The BRB remanded the temporary partial disability award because the ALJ had decided that issue on his own without briefing and evidence from the parties.
 
 
 4
 Prior to remand, National Steel appealed the permanent disability award to this court. National Steel & Shipbuilding Co. v. Director, Office of Workers' Compensation Programs, 626 F.2d 106 (9th Cir.1980). We dismissed National Steel's petition because the company did not appeal from a "final order" of the Board, as required by 33 U.S.C. Sec. 921(c). In their briefs for that appeal, both McGregor and National Steel stated that there was little or no chance of success for the temporary partial disability claim and that McGregor did not intend to pursue the claim any further. Nonetheless, we held that because the BRB had ordered the case remanded, no final order had issued and the petition was premature. 626 F.2d at 108.
 
 
 5
 On September 28, 1981, a second ALJ held an evidentiary hearing on the temporary award and found that no temporary partial disability had existed. McGregor did not appeal that ruling. National Steel then filed this petition for review on November 24, 1981, without seeking further BRB action.
 
 
 6
 National Steel's current petition presents two issues. First, has the company appealed from a "final order" of the BRB?[1] Second, if so, did the ALJ and the Board correctly calculate the permanent disability award on the basis of uncorrected rather than corrected vision?
 
 JURISDICTION
 
 7
 National Steel asserts that, in this case, a second appeal by it to the BRB would have been a useless act. As the Director notes, the Board could reconsider its earlier decision and arrive at a different conclusion only if some intervening development warranted such a change. National Steel contends that a summary affirmance of the ALJ's decision would have been a purely ministerial act on the part of the Board, and should not be a prerequisite for judicial review. Cf. Hattersley v. Bollt, 512 F.2d 209, 213 (3d Cir.1975); Wescott v. Impresas Armadoras, S.A., 564 F.2d 875, 880-81 (9th Cir.1977). While Hattersley and Wescott involved appeals from the district courts under 28 U.S.C. Sec. 1291, "[t]he 'final order' requirement of 33 U.S.C. Sec. 921(c) furthers the same policies as the finality rule embodied in 28 U.S.C. Sec. 1291." National Steel, 626 F.2d at 107. On these facts, requiring an appeal to the BRB would have been futile; a summary affirmance adhering to a previous ruling in the same case may properly be viewed as a purely ministerial act.
 
 
 8
 We therefore conclude that review by this court is now appropriate. Both liability and the extent of damage have been determined. Sun Shipbuilding & Dry Dock Co. v. Benefits Review Board, 535 F.2d 758, 760 (3d Cir.1976) (per curiam). The very uncertainties that caused us to dismiss National Steel's prior appeal have now been permanently laid to rest. When National Steel filed its current petition for review, the time for further review before the BRB had passed and neither side had appealed to the Board.[2] The threat of confusion arising from concurrent jurisdiction no longer exists.[3] See Sea-Land Service, Inc. v. Director, Office of Worker's Compensation Programs, 540 F.2d 629, 631 n. 1 (3d Cir.1976).
 
 
 9
 We therefore hold that the ruling of the Board on McGregor's permanent loss of vision is final and that we have jurisdiction over this petition.
 
 THE COMPENSATION AWARD
 
 10
 The circuits have split on whether an award for loss of sight in an eye should be based on uncorrected or corrected vision. In Washington Terminal Co. v. Hoage, 79 F.2d 158 (D.C.Cir.1935) (en banc), the court held that corrected vision should control. "The intention of the law is to provide compensation for loss or disability in earning power and not indemnity or damages for injury to a member of the body." Id. at 161.
 
 
 11
 The Fifth Circuit reached the opposite conclusion, finding that for losses covered under the schedule of specific injuries, compensation is not tied to lost earning capacity. To that extent, the claimant is compensated for loss of the body member, not lost earning capacity. Gulf Stevedore Corp. v. Hollis, 298 F.Supp. 426, 430-31 (S.D.Tex.1969), aff'd per curiam, 427 F.2d 160, 161 (5th Cir.), cert. denied, 400 U.S. 831, 91 S.Ct. 63, 27 L.Ed.2d 62 (1970). "Moreover, to imply the requirement that claimant's injury qualify as a 'loss' only if the required percentage of impairment cannot be corrected with lenses, is contrary to the liberality with which the Longshoremen's Act is usually construed." Hollis, 298 F.Supp. at 431. See Voris v. Eikel, 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953).
 
 
 12
 Hollis is the better decision. In Potomac Electric Power Co. v. Director, OWCP, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980), the Supreme Court held that an injured employee was entitled only to compensation under the statutory schedule and could not elect a larger recovery as measured by the actual impairment of earning capacity under section 8(c)(21), 33 U.S.C. Sec. 908(c)(21). As the Court noted:
 
 
 13
 It is true, however, that requiring resort to the schedule may produce certain incongruous results. Unless an injury results in a scheduled disability, the employee's compensation is dependent upon proving a loss of wage-earning capacity: In contrast, even though a scheduled injury may have no actual effect on an employee's capacity to perform a particular job or maintain a prior level of income, compensation in the schedule amount must be paid.
 
 
 14
 ....
 
 
 15
 [I]t is not to be lightly assumed that Congress intended the [Act] to produce incongruous results. But if 'compelling language' produces incongruities, the federal courts may not avoid them by rewriting or ignoring that language. Such compelling statutory language is present in this case. See Part I, supra. The fact that it leads to seemingly unjust results in particular cases does not give judges a license to disregard it.
 
 
 16
 Id. at 283-84, 101 S.Ct. at 517 (emphasis added; footnotes and citations omitted). Here, the statute refers only to loss of vision and makes no mention of corrected vision. McGregor should receive the schedule award for his loss.
 
 
 17
 Moreover, the decision in Hoage relied on state workers' compensation cases where the courts required awards based on the period of disability and loss in earnings instead of the schedule award. See, e.g., Frings v. Pierce-Arrow Motor Car Co., 182 A.D. 445, 169 N.Y.S. 309 (1918). Such a result is barred under the federal Act by Potomac Electric, supra. Other cases cited for support have since been repudiated by their courts. The Pennsylvania courts no longer follow the rule in Massett v. Armerford Coal Mining Co., 82 Pa.Super. 579 (1924). See DeVore v. Atlantic Mfg. Co., 208 Pa.Super. 224, 222 A.2d 431, 432-33 (1966); Stachowski v. Incorporated Real Estate Investors, 174 Pa.Super. 152, 100 A.2d 140 (1953). In addition, National Steel's brief quotes at length two state cases where it was to the claimant's advantage to construe the state statute on the basis of loss of corrected vision. State Compensation Ins. Fund v. Workmen's Compensation Appeals Bd., 9 Cal.App.3d 783, 88 Cal.Rptr. 469 (1970); Lambert v. Industrial Commissioner, 411 Ill. 593, 104 N.E.2d 783, 788 (1952). The D.C. Circuit incorrectly tried to interpret the federal Act in a similar manner in Potomac Electric, 606 F.2d 1324 (D.C.Cir.1979), rev'd, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980). Using uncorrected vision is a liberal construction which follows the "compelling language" of the Act as well. The Board calculated the award properly.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 No other circuit has considered this issue. See Director, Office of Worker's Compensation Programs v. Brodka, 643 F.2d 159, 162 n. 6 (3d Cir.1981) ("We need not decide at this time the procedure to be followed to perfect an appeal to this court following the decision of the deputy commissioner on remand")
 
 
 [2]
 At oral argument the Director suggested that a decision permitting the present appeal might in the future prejudice a potential cross-appellant. A claimant in McGregor's position might decide to forego an appeal of the adverse decision of the ALJ on remand in the belief that the employer would not appeal the earlier ruling of the Board favorable to the claimant. If the employer waits until time to appeal to the Board has run and then appeals directly to this court within the more liberal time permitted for such appeals, the claimant would have no way to cross-appeal. His time for appeal to the Board would have expired, and his cross-appeal if brought in this court would by-pass the Board, which had never had an opportunity to rule on the issue decided by the ALJ on remand
 We think the dilemma posed by the Director is more theoretical than real. A claimant will have little incentive to hold back on an appeal to the Board when the Board has already ruled favorably to the claimant on the other issues in the case. In any event, no such prejudice to the claimant is shown in the present case and we need not decide whether our ruling would be different if such prejudice were demonstrated.
 
 
 [3]
 We do not wish our holding to be interpreted as precluding an appeal to the Board under the circumstances of this case, before appealing to this court. Indeed, counsel in the cases like this one would be well advised to appeal again to the Board and only then to petition for review in this court. See Sun Shipbuilding & Dry Dock Co., 535 F.2d at 760 n. 10. By so doing, counsel would eliminate the necessity of demonstrating that the ALJ's decision on remand was truly final in disposing of the issues to be reviewed, and that an appeal to the Board would have been a futile act. Counsel who do not succeed in that demonstration will find their petitions for review dismissed for lack of jurisdiction. No such risk attends an appeal that has proceeded through the Board a second time