**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TOTAL TERMINALS INTERNATIONAL, LLC; SIGNAL MUTUAL INDEMNITY ASSOCIATION, LTD, | No. 23-179 |
| | BRB No. 21-0319 |
| *Petitioners*, | OPINION |
| v. | |
| DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS; ROBERT TOWER, | |
| *Respondents*. | |

On Petition for Review of an Order of the
Benefits Review Board

Argued and Submitted May 15, 2024
San Francisco, California

Filed October 11, 2024

Before: Kenneth K. Lee and Daniel A. Bress, Circuit
Judges, and Gloria M. Navarro, District Judge.[*]

Opinion by Judge Bress

---

[*] The Honorable Gloria M. Navarro, United States District Judge for the
District of Nevada, sitting by designation.

## SUMMARY[**]

### Longshore and Harbor Workers' Compensation Act

The panel granted Total Terminals International, LLC's petition for review of a Benefits Review Board decision that longshoreman Robert Tower, who had hearing loss in one ear and bilateral tinnitus (ear ringing), was entitled to compensation under the Longshore and Harbor Workers' Compensation Act for work-related hearing loss in both ears.

The panel rejected the argument of the Director, Office of Worker's Compensation Programs, that this court lacked jurisdiction because the Board's order remanding this case to an administrative law judge was not final.  Although a remand order is not ordinarily final and appealable, this general rule does not apply when only a ministerial act remains to be completed by the ALJ on remand.  Here, the ministerial act exception applies because the Board's order is final for all practical purposes; the ALJ's only task on remand is to enter an award based on the mechanical requirements of the statute, as the Board interpreted it.

Turning to the merits, the panel held that an injured longshoreman who has hearing loss in only one ear but bilateral tinnitus is properly compensated at the statutory rate for hearing loss in one ear, 33 U.S.C. § 908(c)(13)(A), rather than hearing loss in both ears.  The Longshore Act does not permit monaural hearing loss to be compensated under 33

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

U.S.C. § 908(c)(13)(B) for bilateral hearing loss, even when the claimant also has tinnitus.

The panel vacated the Board's decision and remanded for further proceedings.  The panel expressed no view on whether tinnitus may be compensated under 33 U.S.C. § 908(c)(21), the catch-all provision for "all other cases."

## COUNSEL

Scott E. Holleman (argued), Bauer Moynihan & Johnson LLP, Seattle, Washington, for Petitioners.

Olgamaris Fernandez (argued), Senior Attorney; Mark A. Reinhalter, Counsel for Longshore; Michael P. Doyle, Counsel for Appellate Litigation; Jennifer F. Jones, Deputy Associate Solicitor; Barry H. Joyner, Associate Solicitor; Seema Nanda, Solicitor of Labor; United States Department of Labor, Washington, D.C.; Amie C. Peters (argued) and Amanda E. Peters, Blue Water Legal PLLC, Edmonds, Washington; for Respondents.

**OPINION**

BRESS, Circuit Judge:

The Longshore and Harbor Workers' Compensation Act compensates injured longshoremen at different rates depending on whether they have work-related hearing loss in one or two ears.  The novel question we consider is whether an injured longshoreman who has loss of hearing in only one ear but bilateral tinnitus (ear ringing) should receive compensation at the statutory rate for hearing loss in both ears.  We conclude that an injured longshoreman who has hearing loss in only one ear and who has tinnitus is properly compensated at the statutory rate for hearing loss in one ear.  We grant the petition for review of the Benefit Review Board's contrary decision.

I

A

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, "establishes a comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death." *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994).  Among its purposes "is to compensate employees (or their beneficiaries) for wage-earning capacity lost because of injury." *Metro. Stevedore Co. v. Rambo*, 515 U.S. 291, 298 (1995).

For permanent partial disabilities, the Longshore Act sets out two ways of calculating the disability benefits that an injured longshoreman is due.  The first relies on a pre-set compensation schedule for certain injuries.  For that

"specified list of injuries," the statute "provides a neat and relatively undisputable calculus for assessing lost earning capacity: a predetermined number of weeks' compensation based on two-thirds of the claimant's average weekly wages prior to the injury." *Johnston v. Dir., Off. of Workers Comp. Programs*, 280 F.3d 1272, 1274 (9th Cir. 2002) (citing 33 U.S.C. § 908(c)(1)–(20)).     Thus,    for    example,    a longshoreman who loses an arm receives three hundred and twelve weeks' compensation at two-thirds average weekly pay, while one who loses a "great toe" receives thirty-eight weeks' compensation.  33 U.S.C. § 908(c)(1), (8).

The statute also contains a "catch-all" for "other cases." *Id.* § 908(c)(21) ("Other cases: In all other cases in the class of disability, the compensation shall be 66 $^2/_3$ per centum of the difference between the average weekly wages of the employee  and  the  employee's  wage-earning  capacity thereafter in the same employment or otherwise, payable during  the  continuance  of  partial  disability.").     This provision applies to "all other, non-scheduled permanent partial  disabilities,"  and  "contemplates  a  more  nuanced compensation formula based on the claimant's actual wage-earning capacity after the injury."  *Johnston*, 280 F.3d at 1274.

We  are  concerned  here  with  the  statutory  rules  for hearing loss.  "Loss of hearing" is one of the scheduled disabilities that the Longshore Act compensates using the "neat calculus" of § 908(c).  *See* 33 U.S.C. § 908(c)(13); *Johnston*, 280 F.3d at 1274.  Importantly, compensation for hearing loss is calculated differently depending on whether the claimant has hearing loss in one or both ears.  *See* 33 U.S.C. § 908(c)(13)(A)–(B).  For "loss of hearing in one ear," also known as "monaural" hearing loss, the Act entitles claimants to two-thirds of their average weekly wage for 52

weeks.  *Id.* § 908(c)(13)(A).  For "loss of hearing in both ears," or "binaural" hearing loss, claimants may recover two-thirds of their average weekly wage for 200 weeks.  *Id.* § 908(c)(13)(B).  Thus, binaural hearing loss is compensated at nearly four times the rate as monaural hearing loss.  In either case, however, when hearing loss is partial, the compensation is proportional to the degree of the loss.  *See id.* § 908(c)(19).   Thus, a Longshore Act claimant's compensation for loss of hearing is calculated by multiplying together (1) two-thirds of the claimant's average weekly wage; (2) the number of weeks' pay prescribed by the statute (52 weeks for monaural loss or 200 weeks for binaural loss); and (3) the degree of the claimant's monaural or binaural hearing loss, as measured by a methodology that we explain next.

The Longshore Act provides that "[d]eterminations of loss of hearing shall be made in accordance with the guides for the evaluation of permanent impairment as promulgated and modified from time to time by the American Medical Association [(AMA)]."  *Id.* § 908(c)(13)(E); *see also* 20 C.F.R. § 702.441(d) (requiring use of the most current edition of the guides).  These guides, known as the "AMA Guides," prescribe a multi-step process for assessing a claimant's hearing loss.  First, the medical provider tests each ear separately at the 500, 1000, 2000, and 3000 hertz (Hz) frequencies, recording for every frequency the decibel (dB) level at which the claimant can first register sound.  Next, the provider sums those four decibel levels separately as to each ear, treating negative values as zero and all values over 100 as 100.  Finally, the provider consults a "Monaural Hearing Loss and Impairment" table that converts the summed decibel level, or hearing level, into a percentage hearing loss for that ear.

As the table reflects, if the summed hearing level is 100 or less (meaning that the "average of the hearing levels at 500, 1000, 2000, and 3000 Hz is 25 dB or less"), "no impairment rating is assigned [for that ear] since there is no change in the ability to hear everyday sounds under everyday listening conditions."  Put another way, there is no "ratable" hearing loss in that ear—and thus no hearing loss that is compensable under the Longshore Act—even if the ear exhibits some degree of hearing reduction.  If a claimant has ratable hearing loss in two ears, it is then necessary to consult the Guides to calculate the claimant's binaural hearing loss. That figure is computed by consulting a formula and an accompanying table, which takes as inputs the separate percentage hearing losses in each of the claimant's ears.

Critically for this case, and ostensibly because hearing is a bilateral function, the AMA Guides direct, using a formula and accompanying table, that a monaural hearing loss be converted into a "binaural hearing impairment."  By the nature of the formula, converting a monaural hearing loss into a binaural impairment always results in a lower value. As we explained above, a binaural hearing loss enjoys compensation at nearly four times the pay period as compared to a monaural hearing loss (200 weeks versus 52 weeks).  33 U.S.C. § 908(c)(13)(A)–(B).  But given the Guides' conversion formula, a monaural to binaural conversion will always lead to reduced compensation if the converted amount is treated as compensable under § 908(c)(13)(B).

Some decades ago, the question arose as to how the AMA Guides' monaural-to-binaural conversion process should interact with the award of benefits for claimants who experience hearing loss in only one ear.  That is, if a claimant has hearing loss in only one ear, should he be compensated

at the statutory rate for hearing loss in one ear, or should he be compensated based on the (lower) converted amount for a binaural hearing impairment?  Employers naturally sought the latter, but courts uniformly rejected that position.  *See Rasmussen v. Gen. Dynamics Corp., Elec. Boat Div.*, 993 F.2d 1014, 1016–17 (2d Cir. 1993); *Baker v. Bethlehem Steel Corp.*, 24 F.3d 632, 634 (4th Cir. 1994); *Tanner v. Ingalls Shipbuilding, Inc.*, 2 F.3d 143, 146 (5th Cir. 1993).

As the Second Circuit explained, compensating based on the converted binaural figure was "untenable" because "[a]lthough the AMA Guides recommend that monaural loss be converted to binaural loss, . . . this suggestion does not override the explicit statutory subsection providing benefits for victims of monaural hearing loss." *Rasmussen*, 993 F.2d at 106–17.  The Benefits Review Board eventually came around to this same position.  It now treats as "well-settled" that claimants with ratable hearing loss in only one ear may not receive compensation under § 908(c)(13)(B) for hearing loss in two ears based on the Guides' method for converting a monaural hearing loss into a binaural impairment.  *J.T. v. Global Int'l Offshore, Ltd.*, Nos. 08-0119 & 08-0119A, 2009 WL 2358304, at *10 (Ben. Rev. Bd. 2009).[1]

---

[1] The Guides also offer one further conversion step, which is to calculate "the impairment of the whole person" from his binaural impairment. This can be done by consulting a third table in the Guides.  But the Benefits Review Board has squarely rejected the use of the "whole person" impairment standard for purposes of Longshore Act compensation, deeming it contrary to "the plain language of the statute, which clearly contemplates using the AMA Guides in evaluating the degree of hearing loss shown by audiogram and compensating claimant accordingly." *Cutting v. Gen. Dynamics Corp.*, No. 85-931, 1988 WL 232749, at *2 (Ben. Rev. Bd. 1988).

Finally, the AMA Guides also address circumstances in which a claimant suffers from tinnitus, which the Guides define as "perceived sounds that originate within a person, rather than in the outside world."  Although these sounds vary, they commonly include ringing and buzzing. According to the Guides, "tinnitus is not a disease but rather is a symptom that may be the result of a disease or injury." The Guides acknowledge that the effects of tinnitus are difficult to assess because tinnitus "is primarily a subjective phenomenon" and "[t]here is currently no way to scientifically evaluate" it.  The Guides explain that "it is frequently difficult to verify even the presence of tinnitus, let alone its consequences."  Nonetheless, and critically here, the Guides provide that, "if the tinnitus interferes with [a claimant's activities of daily living], including sleep, reading (and other tasks requiring concentration), enjoyment of quiet recreation, and emotional well-being, *up to 5% may be added to a measurable binaural hearing impairment*." (Emphasis added).

## B

For thirteen years, Robert Tower worked at the Port of Seattle as a senior operations manager for Total Terminals International, LLC (TTI), a global shipping company. Tower's job involved frequent exposure to loud marine operations.

On June 12, 2019, Tower underwent an audiogram to evaluate his hearing.  Applying the AMA Guides' testing formula, Tower's otolaryngologist, Dr. Alan Langman, diagnosed Tower with a 0% right monaural hearing loss and a 9.375% left monaural hearing loss.  Based on the Guides' monaural to binaural conversion table, Dr. Langman

combined those figures to derive a 1.56% binaural hearing loss rating.[2]

In addition, based on Tower's complaint of a "bilateral constant high pitch whine," Dr. Langman diagnosed Tower with bilateral tinnitus.  Based on the Guides' instruction to add up to 5% for tinnitus to the binaural hearing impairment value, Dr. Langman added 2% to Tower's converted binaural impairment rating, for a total of 3.56%.  Based on Tower's subsequent report that he requires Ambien to sleep through the whining noise, Dr. Langman upgraded Tower's tinnitus impairment rating to 4%, for a total (converted) binaural impairment rating of 5.56%.

In making this adjustment, Dr. Langman acknowledged that the Guides require tinnitus to be "added to a measurable binaural hearing impairment."  But Dr. Langman did not believe this "require[d] tinnitus ratings to only be assessed when there is a *ratable* binaural impairment," because "[u]nder the Guides, a monaural rating can be translated to a binaural percentage."  (Emphasis added).  In other words, Tower had ratable hearing loss in only one ear; Dr. Langman converted that monaural loss value to a binaural one; and he then added the tinnitus adjustment to that value.

### C

On July 11, 2019, Tower filed a claim with the Department of Labor, seeking compensation under the Longshore Act for hearing loss due to occupational noise

---

[2] Despite the 0% measurable hearing loss in Tower's right ear, Dr. Langman concluded that Tower still had decreased hearing in that ear and so required bilateral hearing aids.  But because his right ear hearing impairment was not significant enough to be measurable under the AMA Guides, Tower only had a ratable—and thus compensable—hearing loss in his left ear.

exposure.  TTI and its insurer, Signal Mutual Indemnity Association, Ltd., (collectively, "TTI") awarded Tower $7,364.96 under § 908(c)(13)(A).  It did so based on the 9.375% loss of hearing in his left ear (52 weeks x 9.375% monaural hearing loss = 4.875 weeks; 4.875 weeks x $1,510.76 compensation per week = $7,364.96).  Tower, for his part, sought $16,799.65 in benefits under § 908(c)(13)(B) based on Dr. Langman's overall 5.56% converted binaural impairment rating, which included the tinnitus bump-up.  TTI responded that because Tower did "not have a measurable binaural hearing loss," he was only entitled to compensation for hearing loss in one ear under § 908(c)(13)(A).

An Administrative Law Judge (ALJ) ruled for TTI.  The ALJ relied on the Benefit Review Board and circuit court precedent we discussed above, which generally holds that "a monoaural impairment should not be converted to a binaural impairment for purposes of awarding compensation under the Act."  Because Tower had ratable hearing loss in only his left ear, he was "not entitled to additional compensation for tinnitus under [§ 908(c)(13)(B)]."

Tower, joined by the Director of the Office of Workers' Compensation Programs, appealed to a three-judge panel of the Benefits Review Board, which vacated the ALJ's decision over a dissent.  The Board first clarified that because the Guides "unambiguously incorporate[] bilateral tinnitus impairment by adding it to a binaural hearing loss rating," benefits for tinnitus-related impairment must be awarded under § 908(c)(13)—the specific provision of the Longshore Act pertaining to loss of hearing.  That meant that benefits for tinnitus were not to be awarded under § 908(c)(21), the catch-all provision encompassing unscheduled injuries.

The Board next held that under § 908(c)(13), a claimant does "not need to have measurable hearing *loss* in both ears to be entitled to compensation for tinnitus." (Emphasis added). Instead, per the Guides, a claimant only needs to have a "measurable binaural *impairment*," which, in cases of tinnitus, should be calculated using the monaural-to-binaural conversion formula that the Guides prescribe, and then adjusted by up to 5%. (Emphasis added). The Board reasoned that this monaural-to-binaural conversion is necessary when tinnitus is present because it is "the only way for a claimant with a monaural hearing loss to be compensated for the related effects of his tinnitus," which can only be assessed atop a binaural measurement. "Therefore," the Board concluded, "when tinnitus affecting both ears is a factor in a claimant's work-related hearing loss, benefits under the current AMA Guides are to be awarded under Section [908(c)(13)(B)], even if there is measurable hearing loss in only one ear."

The Board acknowledged that prior Board and federal court decisions not involving tinnitus had rejected the notion of converting a monaural loss to a binaural figure and then awarding compensation under § 908(c)(13)(B). But the Board found those cases inapplicable to claimants with tinnitus. The Board accordingly "remand[ed] the case to the ALJ for further consideration and an award of benefits consistent with [its] opinion."

Judge Boggs dissented from the Board's decision. Emphasizing that Towers's "monaural hearing impairment is an undisputed fact," Judge Boggs reasoned that the text of the Longshore Act and the various precedents interpreting it required the Board to award compensation for monaural hearing loss under § 908(c)(13)(A). In her view, "[t]he AMA Guides' conversion of monaural to binaural hearing

loss is no more compelling now as a basis for making payment under the binaural portion of the statute than it was thirty years ago," and "the AMA Guides cannot trump the clear language manifesting the determination of Congress."

TTI moved for reconsideration of the Board's decision and en banc review, which the Board denied.  TTI then petitioned for review in this court.  We have jurisdiction under 33 U.S.C. § 921(c).  We "review the Benefit Review Board's interpretation of the Longshore Act *de novo*." *Pedroza v. BRB*, 624 F.3d 926, 930 (9th Cir. 2010).  To the extent the Director's interpretation of the Longshore Act merits respect, *see Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 832 (9th Cir. 2012) (en banc) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)), this does not change our result because we conclude that the Director and Board's interpretation of the Longshore Act is legally flawed.

## II

Before turning to that issue, we first address the Director's argument that we lack jurisdiction over TTI's petition for review because the Board's order "remand[ing] the case to the ALJ for further consideration and an award of benefits consistent with [its] opinion" is not final.  *See Bish v. Brady-Hamilton Stevedore Co.*, 880 F.2d 1135, 1137 (9th Cir. 1989) ("We have appellate jurisdiction to review an order of the Board only if the order is final." (citing 33 U.S.C. § 921(c))).  Although the Director maintains that the Board's order is not final, both Tower and TTI agree that it is.  Nevertheless, we must determine the matter for ourselves.

An order by the Benefits Review Board is final and appealable under the Longshore Act if it "ends the litigation

on the merits and leaves nothing for the [ALJ] to do but execute the judgment." *Bish*, 880 F.2d at 1137 (quoting *Catlin v. United States,* 324 U.S. 229, 233 (1945)).  We have thus held that a remand order is "ordinarily not final and appealable." *Id.*  In *Bish*, for instance, we declined to review the Benefit Review Board's order "vacating the [ALJ's] order denying modification of Bish's disability compensation award and remanding for reconsideration in light of a new legal standard." *Id.* at 1136.  Because the order did not resolve the merits of the claimant's case, it failed to satisfy "the finality requirement of 33 U.S.C. § 921(c)." *Id.* at 1138.  But our general rule against reviewing remand orders does not apply when "only a ministerial act remains" to be completed by the ALJ on remand.  *Nat'l Steel & Shipbuilding Co. v. Dir., Off. of Workers' Comp. Programs*, 626 F.2d 106, 108 (9th Cir. 1980) ("*McGregor I*").  In that circumstance, the "practical effect" of the remand order is final, enabling immediate review by this court. *Id.*

The "ministerial act" exception to the finality requirement applies here, because the Board's remand order is final for all practical purposes. *Id.*  As the Board noted in its decision, "[t]he facts in this case are undisputed; the question is how to apply the statutory framework to the facts."  And the Board went on to answer that question in full, holding that the ALJ should have (1) converted Tower's monaural hearing loss rating to a binaural one, (2) added an additional impairment for tinnitus, and (3) compensated Tower for hearing loss in both ears under § 908(c)(13)(B).  Thus, under the Board's order, the ALJ's only task on remand is to enter an award based on the mechanical requirements of the statute, as the Board interpreted it.

Because "[b]oth liability and the extent of damage have [already] been determined" by the Board, the ALJ's

remaining tasks qualify as "purely ministerial act[s]." *Nat'l Steel & Shipbuilding Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 703 F.2d 417, 418 (9th Cir. 1983) ("*McGregor II*").  We therefore conclude that the ALJ's pro forma compensation calculation is not a "prerequisite for judicial review." *Id.*

Assured of our jurisdiction, we turn to the merits of TTI's petition.

III

The Longshore Act requires that "[d]eterminations of loss of hearing shall be made in accordance with the [AMA Guides]."  33 U.S.C. § 908(c)(13)(E).  But as this case reflects, the Longshore Act is not compatible with the AMA Guides in every respect.  Before drilling further, we recap the specific incompatibility that we confront today.

The Longshore Act directs that "loss of hearing in one ear" is to be compensated at a different rate than "loss of hearing in both ears." *Id.* § 908(c)(13)(A–B).  But the AMA Guides direct that monaural hearing losses be converted to binaural ones as a matter of course. *See Rasmussen*, 993 F.2d at 1017.  The Guides also indicate that tinnitus should be included in a measure of hearing impairment, but they only contemplate that tinnitus adjustments be added to a "measurable binaural impairment."  According to the Board, the upshot is that because the monaural-to-binaural conversion formula is part of the Guides, a claimant who has lost hearing in only one ear and who has tinnitus must receive benefits under § 908(c)(13)(B), which pertains to hearing loss in both ears. The Board appears to have reached this conclusion in part by reasoning backwards from the premise that this would be "the only way for a claimant with

a monaural hearing loss to be compensated for the related effects of his tinnitus."

For purposes of this decision, we assume that the AMA Guides themselves do not pose a bar to the approach the Board endorsed.  That is, we accept as true the Board's conclusion that the Guides permit an increase for tinnitus when the claimant has ratable hearing loss in only one ear, and that they do not condition the tinnitus adjustment on the presence of ratable hearing loss in both ears.  But this does not end our inquiry.  For the reasons we now explain, the Board's overarching reasoning is irreconcilable with the plain text of the Longshore Act and longstanding precedent interpreting it.  We hold that the Longshore Act does not permit monaural hearing losses to be compensated under § 908(c)(13)(B), even when the claimant also has tinnitus.

As we have already discussed, when tinnitus is not in play, the Board considers it "well-settled" that employers may not convert monaural hearing losses into binaural ones only to then award what would be, in that situation, lower amounts under § 908(c)(13)(B).  *J.T.*, 2009 WL 2358304, at *10.  Every circuit to have considered this question in the non-tinnitus context agrees: The Guides' monaural to binaural conversion process does not "override" the Act's distinction between monaural and binaural hearing loss. *Rasmussen*, 993 F.2d at 1017; *see also Baker*, 24 F.3d at 634; *Tanner*, 2 F.3d at 146.  In other words, "[i]f a claimant has a monaural impairment rating under the AMA Guides of 0 percent in the better ear, she has a 'loss of hearing' within the meaning of [§ 908(c)(13)] in only one ear and is to be compensated accordingly under [§ 908(c)(13)(A)]." *Rasmussen*, 993 F.2d at 1017.

The reason is that the Guides merely "provide the methods employed under the Act for measuring hearing loss, whether monaural or binaural." *Baker*, 24 F.3d at 634 (quoting *Garner v. Newport News Shipbuilding & Dry Dock Co.*, 955 F.2d 41 (4th Cir. 1992) (unpublished)).  It is ultimately the Longshore Act itself that "determine[s] how this loss should be compensated." *Tanner*, 2 F.3d at 146. And the statute is clear that monaural and binaural hearing losses are to be compensated differently.  *See* 33 U.S.C. § 908(c)(13)(A)–(B).  We therefore join our sister circuits in recognizing that monaural hearing losses must be compensated under § 908(c)(13)(A), even though the Guides direct that they be converted to binaural hearing impairments.  *See Tanner*, 2 F.3d at 146 ("[I]t was clearly the intent of Congress that monaural impairment should be compensated according to the specific language of subsection (A).").

Despite recognizing this settled authority, the Board deemed it wholly inapplicable to claims involving tinnitus. The Board reasoned that "the extent of a claimant's hearing loss must be measured according to . . . the AMA Guides." And the Board further observed that the Guides "unambiguously provide[] that in cases of bilateral tinnitus measurable hearing loss only in one ear is converted to bilateral hearing loss, and then an additional rating is added for the tinnitus."  From this, the Board concluded that a claimant with monaural hearing loss and tinnitus should receive compensation under § 908(c)(13)(B).

The flaw in the Board's logic is that it assumes an equivalence between tinnitus and hearing loss that neither the Longshore Act nor the AMA Guides support.  Again, § 908(c)(13) compensates for "loss of hearing."  It gives no indication that any other ear-related injuries, conditions, or

impairments should also be compensated under that section. And from the outset, the Guides treat "hearing loss" and "tinnitus" as separate concepts. In their overarching section on "Hearing and Tinnitus," the Guides state that while "[h]earing . . . can be measured objectively," "other conditions such as . . . tinnitus that are subjective should be noted based on the individual's self-reports." Indeed, even the Benefits Review Board described Tower's situation in a way that distinguishes between tinnitus and hearing loss: "Claimant has a measurable work-related hearing loss in one ear (9.375%), non-measurable hearing loss in the other, and tinnitus in both that affects his daily activities."

The AMA Guides use the broader term "hearing impairment," but the Longshore Act speaks in terms of "loss of hearing." Because tinnitus is not tantamount to a "loss of hearing'" in the first place, it has no bearing on whether a claimant has loss of hearing in one ear or two. Nor is there really any suggestion otherwise in this case, in which everyone agrees that Tower experienced ratable hearing loss in only one ear.

Thus, the Board's own "well-settled" rule, *J.T.*, 2009 WL 2358304, at *10—which we adopt today—governs this case. "[A] monaural impairment must be compensated under Section [908(c)(13)(A)]," and may not be compensated "as if it were a binaural impairment" by applying the Guides' monaural-to-binaural conversion formula. *Id.* By permitting the presence of tinnitus to alter this longstanding framework, the Board's decision disregarded the statutory directive that loss of hearing in one ear is to be compensated differently than loss of hearing in both ears. *See, e.g.*, *Rasmussen*, 993 F.2d at 1017. We accordingly hold that when a claimant has tinnitus in addition to ratable hearing loss in just one ear, he must

receive compensation for "loss of hearing" under § 908(c)(13)(A). Such a claimant does not receive any additional compensation for his tinnitus by treating tinnitus as if it were hearing loss in both ears under § 908(c)(13)(B).

Tower and the Director object that this conclusion is inconsistent with our duty to "construe broadly [the Longshore Act's] provisions so as to favor claimants in the resolution of benefits cases." *Price*, 697 F.3d at 843. But as we have recognized, a principle of liberal construction "does not mean that the claimant always wins," nor does it "provide courts the freedom to 'add features that will achieve the statutory "purposes more effectively.'" *Martin v. Sundial Marine Tug & Barge Works, Inc.*, 12 F.4th 915, 921 (9th Cir. 2021) (quoting *Dir., Off. of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 135–36 (1995)). We do not adopt an interpretation of the Longshore Act that automatically favors claimants, without regard to how the text is best read.

Nor can we construe the Act to embrace supposedly better policy than its text reflects. In effect, Tower and the Director are asking us to expand § 908(c)(13)(B) to include persons with monaural hearing loss and another impairment, in this case tinnitus, on the theory that tinnitus interferes with the activities of daily life. But such an expansion is a task for Congress, not the courts. We sympathize with claimants who experience tinnitus, which can be a nuisance, a major aggravation, or much worse. But we are powerless to disrupt Congress's decision to set Longshore Act compensation for hearing loss based on whether one or both of a claimant's ears experience a "loss of hearing," as opposed to any other number of alternative schemes it might have chosen.

Tower and the Director's position also leads to some strange results. A rule requiring claimants with monaural hearing loss and tinnitus to be compensated for their converted binaural loss under § 908(c)(13)(B) would actually not favor claimants in every case. Instead, given the specific formulae involved, whether a claimant would receive a larger or smaller award under Tower and the Director's preferred approach would vary from claimant to claimant, depending on the severity of his monaural hearing loss and his tinnitus. As the monaural hearing loss goes up relative to the tinnitus, the benefit of the tinnitus adjustment decreases, to the point that eventually a claimant with monaural hearing loss and tinnitus would receive a larger award under § 908(c)(13)(A). When claimants do not always stand to gain, the "interpretive principle of beneficence is . . . of little help." *Keenan v. Dir. for Benefits Rev. Bd.*, 392 F.3d 1041, 1044 (9th Cir. 2004).

In addition, and although there is no evidence of impure motives or malingering in this case, Tower and the Director's position would potentially allow injured workers to strategically claim that they have tinnitus, which is subjective and difficult to confirm. It seems unlikely that Congress intended to inject such uncertainty into a pre-set compensation schedule whose hallmarks are simplicity and verifiability, even as the rigidity of the scheme, like many workers' compensation regimes, may undercompensate or overcompensate a claimant's "true" disability in any given case. *See Potomac Elec. Power Co. v. Director, OWCP*, 449 U.S. 268, 282–83 (1980).

We grant TTI's petition for review, vacate the Board's decision, and remand for further proceedings in accordance with this opinion. Under the Longshore Act, a claimant with monaural hearing loss and tinnitus receives compensation

for his "loss of hearing" under § 908(c)(13)(A), not § 908(c)(13)(B).  We express no view on whether tinnitus may be compensable under § 908(c)(21), the catch-all provision for "all other cases."

**PETITION     GRANTED;     VACATED     AND REMANDED.**